**FILED**

AUG 2 4 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
                    DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER PETERSON III,<br><br>                    Plaintiff,<br><br>        v.<br><br>STATE OF CALIFORNIA DEPARTMENT<br>OF CORRECTIONS AND<br>REHABILITATION, RONALD HANSEN,<br>DERRAL ADAMS, AND DOES 1-20,<br><br>                    Defendants. | 1:06-CV-0349 OWW DLB<br><br>ORDER RE: PLAINTIFF'S MOTION<br>TO REMAND (DOC. 4) AND<br>DEFENDANTS' MOTION TO DISMISS<br>(DOC. 5) |

## I.    INTRODUCTION

This is an employment discrimination case filed by Spencer Peterson III ("Plaintiff"), a California Correctional Officer, against the California Department of Corrections and Rehabilitation ("CDCR") and two of Plaintiff's supervisors, Ronald Hansen and Derral Adams (collectively "Defendants"). On March 28, 2006, Defendants removed this case from Superior Court for the County of Kings. (Doc. 1.)

Before the court for decision is Plaintiff's motion to remand the case to state court (Doc. 4 filed Apr. 13, 2006), and Defendants' motion to dismiss all of the claims in the case (Doc. 5.) Defendants filed opposition to the motion to remand prior to the scheduled oral argument (Doc. 6), but Plaintiff

1

1  initially failed to timely file opposition to the motion to
2  dismiss.  However, he was granted leave to late file subsequent
3  to oral argument and did so.  Plaintiff submitted an opposition
4  to the motion to dismiss on June 1, 2006.  (Doc. 10.)  On June 2,
5  2006, Defendants filed a partial objection arguing that
6  Plaintiff's submission was untimely and beyond scope.  (Doc.
7  11.)[1]

## II.  BACKGROUND

10  Plaintiff is an African-American resident of Visalia,
11  California.  (See Compl. at ¶3.)  In 1986, Plaintiff began
12  working for CDCR at the California Medical Facility, in
13  Vacaville, California, where he maintained an "exemplary"
14  employment record.  (Compl. at ¶9.)  In 1997, he was transferred
15  to a position within the Substance Abuse Treatment Facility
16  ("SATF") in Corcoran, California.  (Id. at ¶10.)  While at
17  Corcoran, Plaintiff was promoted to the rank of Correctional

---

19
20  [1] Defendants' general objection to the supplemental filing
    on timeliness grounds is not well-founded.  At oral argument,
21  both parties were afforded an opportunity to cite additional
    caselaw regarding the viability of Plaintiff's section 1981 claim
22  under Judie v. Hamilton, 872 F.2d 919 (9th Cir. 1989).
    Defendants raised no objections at oral argument to allowing
23  supplementation on this issue.
    Defendants also object to a portion of Plaintiff's
24  supplemental filing on the ground that it exceeds the narrow
    scope of the Judie issue.  Specifically, Plaintiff makes
25  supplemental arguments regarding claim preclusion issues raised
    in Defendants' motion.  Although this objection has merit, some
26  of Plaintiff's arguments are addressed herein to provide a
    comprehensive explanation of the law.  As discussed below, none
27  of Plaintiff's arguments are persuasive.  Accordingly, Defendant
28  is not prejudiced.

2

1 | Sergeant.  (*Id.* at ¶11.)

2 |     Beginning in March 2004, Plaintiff asserts that he "began to
3 | suffer racially discriminatory employment practices." (*Id.* at
4 | ¶12.)  Specifically, the complaint alleges three types of
5 | discriminatory activity occurred.  First, the complaint alleges
6 | that Defendant Hansen refused to "approve or sign" Plaintiff's
7 | regular performance evaluation:

8 |     [I]n November 2003, plaintiff's supervisor conducted
    plaintiff's regular performance evaluation, submitting
9 |     plaintiff's evaluation up the chain of command to
    Custody Captain, defendant Ron Hansen, for his approval
10 |     pursuant to established CDCR practice/procedure.
    Without justification or explanation, defendant Hansen
11 |     refused to approve or to sign plaintiff's evaluation.
    Plaintiff is informed an believes that the evaluation
12 |     remains unsigned and unapproved by defendant Hansen, as
    of the date of filing of this complaint.

13 | (*Id.* at ¶12a.)  Second, the complaint alleges that Defendant
14 | Adams refused to approve Plaintiff's request to pursue a graduate
15 | degree:

16 |     [O]n February 4, 2004, without justification or
17 |     explanation, defendant Warden Derral Adams refused to
    sign an Endorsement form required in order for
18 |     plaintiff to be admitted to a Doctoral educational
    program through the University of LaVerne, for which
19 |     plaintiff was otherwise qualified and admitted.
    Plaintiff submitted this Endorsement form to defendant
20 |     Warden Adams on three separate occasions; nevertheless,
    defendant Warden Adams remained steadfast in his
21 |     refusal to sign the form.  Defendant Warden Adams'
    refusal to sign the plaintiff's Endorsement form caused
22 |     a delay in plaintiff's entry into the Doctoral program
    of approximately a year, in turn resulting in monetary
23 |     damages, and other damages including lost opportunity
    costs, to plaintiff.

24 | (*Id.* at ¶12b.)  Finally, the complaint alleges that on various
25 | occasions Plaintiff was either passed over for promotion to
26 | Lieutenant or was denied the opportunity to apply for a
27 | promotion, despite being qualified to serve as a Lieutenant.
28 |

On March 16, 2004, plaintiff interviewed for promotion
to Correctional Lieutenant.  Although plaintiff was
rated as competitive, he was denied the promotion.
On June 17, 2004, plaintiff again interviewed for
promotion to Correctional Lieutenant.  Again plaintiff
rated well; again he was denied the promotion.

On December 6, 2004, plaintiff again interviewed for
promotion to Correctional Lieutenant.  Defendant Hansen
sat as head of the promotions panel for this
promotional opportunity.  Although all interviews,
including those earlier interview(s) inwhich plaintiff
had rated competitive, and although plaintiff performed
better than he had in the prior, March 16, 2004
interviews, Defendant Hansen's panel inaccurately rated
plaintiff as non-competitive; thereafter and thereupon,
candidates other than plaintiff, who were not African-
American, and who were in truth less qualified for the
position than was plaintiff, were promoted instead of
plaintiff.

On April 14, 2005, CSATF conducted interviews for
Correctional Lieutenant.  Defendants CDCR, plaintiff
believes, defendants Adams and/or Hansen participated
in causing plaintiff to not be notified that these
Lieutenant's position interviews were occurring, and
thereby caused plaintiff to be improperly excluded
from, participating in these interviews, although
plaintiff had properly applied for the position and had
properly requested as part of that application process,
to be included among the interviews.

(*Id.* at ¶12c-f.)

On April 28, 2005, Plaintiff filed a race discrimination

complaint with CDCR's Office of Civil Rights, complaining that he

was not "given equal consideration for promotional advancement,"

that the Custody Captain refused to sign his employee performance

evaluation, and that the Warden refused to allow him to enroll in

the Doctoral program.  (*See* Doc. 5-3 at ¶I and Ex. A.)[2]

_____

[2]  Defendant requests that the district court take judicial
notice of a number of documents pertaining to Plaintiff's
administrative complaints.  See Doc. 5-3.  Plaintiff has raised
no objections to their authenticity and their content does not
appear to be in dispute.  They are therefore judicially
noticeable under Federal Rule of Evidence 201.  The request for

1    Plaintiff filed an essentially identical set of claims
2  before the State Personnel Board ("SPB") on May 25, 2005. (*See*
3  Doc. 5-3, ¶¶ III, IV & XI and Ex. C & D.)  On August 30, 2005, a
4  SPB administrative law judge ("ALJ") conducted a full adversary
5  evidentiary hearing on all of Plaintiff's discrimination claims.
6  Defendants Adams and Hansen testified under oath at that hearing.
7  (*Id.* at ¶ V.)  On September 23, 2005, the ALJ wrote a proposed
8  decision, ruling that Plaintiff failed to establish a prima facie
9  claim of race discrimination and granting Defendants' motion to
10  dismiss.  (*Id.* at ¶ VI.)  The SPB adopted the ALJ's proposed
11  decision as its own on October 3, 2005.  (*Id.* at ¶ VII.)
12  Plaintiff filed a request for rehearing on November 4, 2005, but
13  this request was denied by written notice on January 27, 2006.
14  Under California Government Code section 11519(a) the SPB's
15  decision became final on February 26, 2006.  (Id. at ¶X.)
16  Plaintiff had thirty days to seek judicial review.  Cal. Gov.
17  Code § 11523.

18
19                    III.  **STANDARD OF REVIEW**

20    **A.    Motion to Remand.**

21    The proper procedure for challenging removal is a motion to
22  remand.  Remand may be ordered either for lack of subject matter
23  jurisdiction or for any defect in the removal procedure.  28
24  U.S.C. § 1447(c).  Section 1447(c), provides in pertinent part:

25            A motion to remand the case on the basis of any defect
            other than lack of subject matter jurisdiction must be
26            made within 30 days after the filing of the notice of

27  _____

28  judicial notice is **GRANTED**.

5

1

2

3

4

> removal under section 1446(a). If at any time before
> final judgment it appears that the district court lacks
> subject matter jurisdiction, the case shall be
> remanded. An order remanding the case may require
> payment of just costs and any actual expenses,
> including attorney fees, incurred as a result of the
> removal....

5  *Id.*

6       Federal courts construe removal statutes strictly in order
7  to limit removal jurisdiction. *Shamrock Oil & Gas Corp. v.*
8  *Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus v. Miles*, 980 F.2d 564,
9  566 (9th Cir. 1992). Removal is generally proper when the
10  district courts have original jurisdiction over the action. *See*
11  28 U.S.C. § 1441; *Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir.
12  1996). Jurisdiction must be determined from the face of the
13  complaint, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392
14  (1987), and it must be clear from the face of the complaint under
15  the well-pleaded complaint rule that federal subject matter
16  jurisdiction exists. *Oklahoma Tax Comm'n. v. Graham*, 489 U.S.
17  838, 840-41 (1989) (per curiam). Defendant, as the party who
18  invokes removal jurisdiction, has the burden of demonstrating the
19  existence of federal jurisdiction. *Gaus,* 980 F.2d at 566.

20

21       **B.   Motion to Dismiss.**

22       In deciding whether to grant a motion to dismiss, a court
23  must "take all of the allegations of material fact stated in the
24  complaint as true and construe them in the light most favorable
25  to the nonmoving party." *Rodriguez v. Panayiotou*, 314 F.3d 979,
26  983 (9th Cir. 2002). In general, "a *pro se* complaint will be
27  liberally construed and will be dismissed only if it appears
28  beyond doubt that the plaintiff can prove no set of facts in

6

1  support of his claim which would entitle him to relief." *Pena v.*
2  *Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). However, "a liberal
3  interpretation of a [pro se] complaint may not supply essential
4  elements of the claim that were not initially pled." *Id.*

## IV.   ANALYSIS

### A.   Motion to Remand.

8       Plaintiff requests that this case be remanded to state court
9  on the ground that the Eleventh Amendment immunizes state
10 entities from suit in federal court and that subject matter
11 jurisdiction is therefore lacking. Plaintiff's argument is
12 misplaced. First, a state entity may waive sovereign immunity
13 for the purposes of a single lawsuit, and the state defendant has
14 done so in this case. (*See* Doc. 6 at 5:11-13.) Second, Congress
15 may revoke the states' Eleventh Amendment immunity under certain
16 circumstances. (This is sometimes referred to as "abrogating"
17 the states' Eleventh Amendment immunity.) The Ninth Circuit
18 explained:

19         [a]s a threshold matter, we note that the Eleventh Amendment
           does not bar us from hearing [plaintiff's] Title VII claims.
20         The Eleventh Amendment does not apply if Congress has
           abrogated its scope with respect to a given issue. *See*
21         *Fitzpatrick v. Bitzer*, 427 U.S. 445, 49 L. Ed. 2d 614, 96 S.
           Ct. 2666 (1976). The Supreme Court has held that Congress
22         has abrogated the Eleventh Amendment with respect to Title
           VII claims. *See id.* at 455-56. Accordingly, we have
23         jurisdiction to hear [plaintiff's] Title VII claims against
           all the defendants, including the [San Francisco Community
24         College] district.

25 *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 976 (9th
26 Cir. 1994). Title VII of the Civil Rights Act of 1964 abrogates
27 the states' immunity under the Eleventh Amendment.

28       Plaintiff's motion to remand is **DENIED**.

7

**B.    Motion to Dismiss.**

    **1.    Count One: Title VII.**

        **a.    *Redundancy of Section 1981 Allegation Contained in Count One.***

Defendant points out that the first count in the complaint, titled "Violation of Civil Rights (Title VII)" states in paragraph 18 that "Defendant CDCR took adverse job action against plaintiff on the basis of plaintiff's race, in violation of 42 U.S.C. § 1981." Defendant requests that the reference to section 1981 in the first count be stricken and the count dismissed on redundancy grounds. During oral argument, Plaintiff conceded that it was a typographical error. Consequently, count one should not be dismissed based on redundancy. Rather, the phrase "in violation of 42 U.S.C. § 1981" contained in paragraph 18 is **STRICKEN** and replaced by "in violation of Title VII."

        **b.    *Exhaustion of Administrative Remedies.***

To bring a Title VII claim in federal court, Plaintiff must have exhausted his administrative remedies, including regulatory and judicially-imposed exhaustion requirements. *Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995). He must have pursued his administrative claims "with diligence and in good faith...and may not cut short the administrative process prior to its final disposition...." *Id.* Here, the complaint alleges in a conclusory fashion that Plaintiff has "exhausted his administrative remedies and met the pertinent pre-filing conditions under Title VII, in that he has filed a complaint

8

1   with, and received a 'Right to Sue' letter from the U.S. Equal
2   Opportunity Commission, within the statutory time period prior to
3   the filing of the complaint." (Doc. 1.) Defendants object that
4   this assertion is an insufficient legal conclusion and that
5   Plaintiff should have attached a copy of the administrative
6   complaint or the alleged right-to-sue letter. Defendants have
7   pointed to no cases, however, which support dismissal at the
8   pleading stage under such circumstances.

9       As a general matter, consistent with the Federal Rules'
10   liberal pleading standards, "[i]n pleading the performance or
11   occurrence of conditions precedent, it is sufficient to aver
12   generally that all conditions precedent have been performed or
13   have occurred." Fed. R. Civ. Pro. 9(c); *see also Mercer v. City*
14   *of Cedar Rapids, Iowa*, 79 F. Supp. 2d 1055, 1061 (N.D. Iowa 1999)
15   (even if plaintiff's allegation that she exhausted her Title VII
16   claims constitutes a "conclusory allegation of law," her
17   allegation of fact that she timely received a right-to-sue letter
18   must be presumed true). Plaintiff has averred that he has
19   received a "right to sue" letter from the United States Equal
20   Opportunity Commission and that he has complied with all of the
21   procedural requisites for filing a Title VII complaint. (Doc.
22   1.) It is more appropriate to challenge exhaustion by way of a
23   motion for judgment on the pleadings or motion for summary
24   judgment, at which time both parties may have an opportunity to
25   submit copies of the relevant EEOC documents.

26       No other bases for dismissal of the Title VII claim are
27   advanced by Defendants. Defendants' motion to dismiss Count One
28   is **DENIED**.

1        **2.   Count Two: Section 1981.**

2               **a.   *Absence of Contractual Relationship.***

3        The second count of the complaint alleges that Defendants'

4   conduct violated 42 U.S.C. § 1981, which prohibits discrimination

5   in the making and/or enforcement of employment contracts.

6   Defendants move to dismiss for failure to state a claim on the

7   ground that Plaintiff's employment relationship with CDCR is

8   governed by the civil service code, a statute, not by contract.

9   Defendant asserts that "Plaintiff did not have a contract of

10  employment with [CDCR] nor a contractual relationship of any

11  kind.  At all times relevant, he was a [CDCR] employee and was,

12  therefore, a civil servant."  (Doc. 5 at 7.)

13       Section 1981 provides:

14               (a) Statement of equal rights.

15               All persons within the jurisdiction of the United
                 States shall have the same right in every State and
16               Territory to make and enforce contracts, to sue, be
                 parties, give evidence, and to the full and equal
17               benefit of all laws and proceedings for the security of
                 persons and property as is enjoyed by white citizens,
18               and shall be subject to like punishment, pains,
                 penalties, taxes, licenses, and exactions of every
19               kind, and to no other.

20               (b) "Make and enforce contracts" defined

21               For purposes of this section, the term "make and
                 enforce contracts" includes the making, performance,
22               modification, and termination of contracts, and the
                 enjoyment of all benefits, privileges, terms, and
23               conditions of the contractual relationship.

24               (c) Protection against impairment

25               The rights protected by this section are protected
                 against impairment by nongovernmental discrimination
26               and impairment under color of State law.

27  42 U.S.C. § 1981.  In order to establish a claim under section

28  1981, a plaintiff must establish that (1) he or she is a member

                                    **10**

1  of a racial minority; (2) the defendant intended to discriminate
2  against plaintiff on the basis of race by the defendant; and (3)
3  the discrimination concerned one or more of the activities
4  enumerated in the statute (i.e., the right to make and enforce
5  contracts, sue and be sued, give evidence, etc.)." *Mian v.*
6  *Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d
7  Cir. 1993); *see Green v. State Bar of Tex.*, 27 F.3d 1083, 1086
8  (5th Cir. 1994).

9       Section 1981 is not "a general proscription of racial
10 discrimination...it expressly prohibits discrimination only in
11 the **making and enforcement of contracts**." *Patterson v. McLean*
12 *Credit Union*, 491 U.S. 164, 176 (1989)(emphasis added); *see also*
13 *Georgia v. Rachel*, 384 U.S. 780, 791 (1966) ("The legislative
14 history of the 1866 Act clearly indicates that Congress intended
15 to protect a limited category of rights").

16               In this respect, [Section 1981] prohibits
                discrimination that infects the legal process in ways
17              that prevent one from enforcing contract rights, by
                reason of his or her race, and this is so whether this
18              discrimination is attributed to a statute or simply to
                existing practices. It also covers wholly private
19              efforts to impede access to the courts or obstruct
                nonjudicial methods of adjudicating disputes about the
20              force of binding obligations, as well as discrimination
                by private entities, such as labor unions, in enforcing
21              the terms of a contract.

22 *Patterson*, 491 U.S. at 177.  The Supreme Court emphasized in
23 *Patterson* that "one cannot seriously contend that the grant of
24 the other rights enumerated in § 1981 [that is, other than the
25 right to make contracts,] i.e., the rights to sue, be parties,
26 give evidence, and enforce contracts' accomplishes anything other
27 than the removal of legal disabilities to sue, be a party,
28 testify or enforce a <u>contract</u>.  Indeed, it is impossible to give

11

1    such language any other meaning." *Id.* at 178.

2         In an attempt to broaden the *Patterson* Court's reading of
3    the term "make and enforce contracts," Congress in 1991 amended
4    section 1981 to include section 1981(b) (restated above).   The
5    Supreme Court recently explained that the amendment has brought
6    "postformation conduct, including discriminatory termination,
7    within the scope of § 1981." *Domino's Pizza, Inc. v. McDonald*,
8    126 S. Ct. 1246, 1250 (2006).  Nonetheless, the Court explained
9    *Patterson's* focus upon contractual obligations was "positively
10   reinforced... [by] § 1981(b)'s reference to a 'contractual
11   relationship.'" *Id.*  Consequently, "a plaintiff cannot state a
12   claim under § 1981 unless he has (or would have) rights under
13   [an] existing (or proposed) contract that he wishes 'to make and
14   enforce.'" *Id.* at 1252.

15        Whether or not employees of the State of California can sue
16   under section 1981 is an unresolved question.  Defendant argues
17   that because California courts treat the civil service employment
18   relationship as non-contractual, Plaintiff's section 1981 claim
19   must be dismissed, citing *Judie v. Hamilton*, 872 F.2d 919, 922
20   (9th Cir. 1989).  The plaintiff in *Judie* filed a section 1981
21   claim, alleging that he was not permitted to perform supervisory
22   duties contained in his job description.  The Ninth Circuit first
23   examined whether state or federal law controlled the
24   determination as to whether the plaintiff's job relationship
25   could be characterized as contractual.  Finding that the language
26   of section 1981 provided no specific guidance, the *Judie* court
27   applied a three-step analysis, based on 42 U.S.C. § 1988 to
28   determine the appropriate rule:

**12**

> First, courts are to look to the laws of the United
> States "so far as such laws are suitable to carry [the
> civil and criminal civil rights statutes] into effect."
> If no suitable federal rule exists, courts undertake
> the second step by considering application of state
> "common law, as modified and changed by the
> constitution and statutes" of the forum State. A third
> step asserts the predominance of the federal interest:
> courts are to apply state law only if it is not
> "inconsistent with the Constitution and laws of the
> United States."

*Id.* at 922. With respect to the first step, the *Judie* court determined that the civil rights statutes do not provide a body of law for interpreting contracts. *Id.* The Ninth Circuit next examined Washington state law to determine whether the job description constituted a contract. The *Judie* court found that the plaintiff's job description would not create contractual expectations, but rather they are a part of a "system of personnel administration." *Id.* at 923. Finally, no inconsistency was found between Washington state contract law and federal civil rights laws. *Id.* Therefore there was no cognizable 1981 claim.[3] *Id.*

---

[3] No published federal case has applied the *Judie* analysis to California employees. The Ninth Circuit in an unpublished opinion recently concluded that a California civil servant could bring a section 1981 claim. *See Ramirez v. Kroonen*, 44 Fed. Appx. 212 (9th Cir. 2002)(holding that even though California law provided that public employment was held by statute, this did not preclude employee from asserting his section 1981 claim). At the district court level, two unpublished opinions concerning California civil servants have dismissed § 1981 claims under *Judie*, while at least one opinion has distinguished *Judie*. See *Barefield v. Cal. State Univ. Bakersfield*, 2006 U.S. Dist. LEXIS 21677 (E.D. Cal. 2006)(precluding Plaintiff from asserting his section 1981 claim); *see also Zimmerman v. City & County of San Francisco*, 2000 U.S. Dist. LEXIS 10866 (N.D. Cal. 2000) (precluding Plaintiff from asserting his section 1981 claim); *see also Lukovsky v. City & County of San Francisco*, 2006 U.S. Dist. LEXIS 9841 (N.D. Cal. 2006) (allowing Plaintiff to assert his

13

1    Consistent with the first prong of the *Judie* test, there are
2    no civil rights statutes or federal rules that provide a body of
3    law to interpret contracts. *Id*. at 922.

4         The second prong of the *Judie* test requires us to look at
5    California state law to determine whether the civil service
6    statutes create contractual expectations. Under California law,
7    "public employment is not held by contract but by statute...."
8    *Shoemaker v. Myers*, 52 Cal. 3d 1, 23 (1990). Disgruntled
9    California civil service employees have been precluded from
10   bringing some contract claims with respect to their employment.
11   For example, in *Shoemaker*, the California Supreme Court held that
12   a civil service employee could not bring a claim for a breach of
13   the implied covenant of good faith and fair dealing, reasoning
14   that such a claim would "restate the obligation of the State to
15   deal fairly and in good faith with its employees as required by
16   statute and administrative rules.... [R]emedies for breach of that
17   obligation are in the administrative procedures provided by the
18   State civil service system." 52 Cal. 3d at 21.

19        However, the Supreme Court of California recently explained
20   that "a long line of California cases establishes that with
21   regard to at least certain terms or conditions of employment that
22   are created by statute, an employee who performs services while
23   such a statutory provision is in effect obtains a right,
24   *protected by the contract clause* [in the U.S. Constitution], to
25   require the public employer to comply with the prescribed
26   condition." *White v. Davis*, 30 Cal. 4th 528, 564-565 (Cal. 2003)
27
28   section 1981 claim).

**14**

1 (emphasis in original).  These cases gave public employees
2 contractual rights to the "payment of salary which has been
3 earned," protection from a reduction of "pension benefits" and
4 from having state legislatures fail to continue to make
5 "contributions to its employees' retirement fund."  *Id*. at 565-
6 566.  Under *White*, certain contractual rights are afforded to
7 California public employees.  Accordingly, although the holding
8 in White is somewhat narrow in scope, this factor weighs in favor
9 of allowing the section 1981 claim to proceed in this case.

10       The third prong of *Judie* requires a court to examine whether
11 a predominant federal interest mandates that California public
12 employees have recourse to section 1981 for discriminatory
13 conduct.  At the heart of the protections afforded by section
14 1981 is the right to dispose of one's labor freely by contract.
15 *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) (citing
16 *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441 n.78 (1968)).
17 The Supreme Court has always found that section 1981 prohibits
18 governmental discrimination, and has consistently held that it
19 prohibits private discrimination.  *See Runyon v. McCrary*, 427
20 U.S. 160, 168-72 (1976); *Johnson v. Railway Express Agency, Inc.*,
21 421 U.S. 454, 459-60 (U.S. 1975).  Consequently, there is a
22 strong federal policy to prevent employment discrimination
23 against governmental employees.

24       The right to employment and promotion, at issue in the
25 instant case, goes to the heart of this federal policy.  As noted
26 above, Congress amended section 1981 to include post-contract
27 formation conduct.  With this amendment, Congress made
28 discriminatory conduct actionable during subsequent contract

**15**

1  modifications in the course of employment, such as a promotion.
2  To deprive Plaintiff of any section 1981 protection would clash
3  with clear federal policy. If California law is read to bar
4  public employees from bringing their discrimination claims, this
5  would conflict with section 1981 because it restricts Plaintiff's
6  ability to contract for employment. Cf. White, 30 Cal. 4th 528,
7  564-65 (noting that certain contractual obligations cannot be
8  destroyed merely because employment is held by statute). Under
9  the third prong of the Judie test, this order must follow the
10 predominant federal interest.

11       There is an important distinction between Judie and the
12 instant case. The Judie case was heard prior to the 1991
13 amendment expanding the "make and enforce" term of section 1981
14 claims. The employment activity at issue at the time Judie was
15 decided (suspension and performance of supervisory duties), was
16 not specifically recognized as falling under the contractual
17 relationship protected by section 1981. As noted above, the
18 activity at issue here, hiring and promotion, falls directly
19 under the amended version of section 1981. Applying the Judie
20 factors here suggests a different conclusion than was reached in
21 Judie, particularly in light of the contractual rights afforded
22 California civil servant employees. White, 30 Cal. 4th at 564.
23 Therefore, Plaintiff's statutorily held employment should not bar
24 his ability to bring section 1981 claims.

25

26                **b.    Res Judicata / Collateral Estoppel**
27       In the alternative, Defendants argue that Plaintiff's
28 section 1981 claim should be dismissed on res judicata (claim

                                16

1  preclusion) or collateral estoppel (issue preclusion) grounds.

2          **i)   Additional Relevant Procedural History**

3      On April 28, 2005, Plaintiff filed a race discrimination

4  complaint with CDCR's Office of Civil Rights, complaining that he

5  was not "given equal consideration for promotional advancement,"

6  that the Custody Captain refused to sign his employee performance

7  evaluation, and that the Warden refused to allow him to enroll in

8  the Doctoral program. (*See* Doc. 5-3 at ¶I and Ex. A.)  Plaintiff

9  asserted the same claims before the State Personnel Board ("SPB")

10 on May 25, 2005. (*See* Doc. 5-3, ¶¶ III, IV & XI and Ex. C & D.)

11 On August 30, 2005, a SPB administrative law judge conducted a

12 full adversary evidentiary hearing on all of Plaintiff's

13 discrimination claims.  Defendants Adams and Hansen testified

14 under oath. (*Id.* at ¶ V.)  On September 23, 2005, the ALJ wrote

15 a proposed decision, ruling that Plaintiff failed to establish a

16 *McDonnell Douglas* prima facie claim of race discrimination and

17 granted Defendants' motion to dismiss. (*Id.* at ¶ VI.)  The SPB

18 adopted this proposed decision as its own on October 3, 2005.

19 (*Id.* at ¶ VII.)  Plaintiff filed a request for rehearing on

20 November 4, 2005, but this request was denied by written notice

21 on January 27, 2006.  Under California Government Code section

22 11519(a) the SPB's decision became final on February 26, 2006.

23 (*Id.* at ¶X.)  Plaintiff had thirty days to seek judicial review

24 under California Government Code section 11523, which provides in

25 pertinent part:

26          Judicial review may be had by filing a <u>petition for a</u>
           <u>writ of mandate</u> in accordance with the provisions of
27         the Code of Civil Procedure, subject, however, to the
           statutes relating to the particular agency. Except as
28         otherwise provided in this section, the petition shall

                              **17**

be filed within 30 days after the last day on which reconsideration can be ordered....

Plaintiff did not file a petition for a writ of mandate. Instead, he filed a complaint in Superior Court on February 27, 2006, asserting two federal civil rights claims and a claim under FEHA. Defendants argue that the SPB's decision should be given res judicata or collateral estoppel effect.

## ii) Legal Framework

The analysis set forth in *Univ. of Tennessee v. Elliott,* 478 U.S. 788 (1986), determines when a Title VII or section 1981 claim adjudicated by a state administrative body can be given preclusive effect in federal courts. In *Elliott*, a former employee of the University requested an administrative hearing on his discrimination claim under Tennessee's administrative procedure act. *Id.* at 790. An ALJ ruled against him and the University affirmed the decision on appeal. *Id.* at 791. Rather than seeking review of this decision within the state system, the employee sought to resume a federal civil rights lawsuit that had been stayed prior to commencement of the administrative hearing process. *Id.* at 792. The Supreme Court examined whether the ALJ's decision should be given preclusive effect with respect to the employee's Title VII claims and claims under several reconstruction-era civil rights statutes (i.e., section 1981, 1983, 1985, 1986). With respect to the Title VII claim, the *Elliott* court held that the unreviewed administrative determination should not be given preclusive effect:

> Under 42 U.S.C. § 2000e-5(b), the Equal Employment Opportunity Commission (EEOC), in investigating discrimination charges, must give "substantial weight to final findings and orders made by State or local

**18**

> authorities in proceedings commenced under State or local [employment discrimination] law." As we noted in Kremer, 456 U.S., at 470, n. 7 it would make little sense for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court....
>
> ...[T]he respondent in this case pursued his Title VII action following an administrative proceeding at which the employing agency rejected a discrimination claim. It would be contrary to the rationale of Chandler to apply res judicata to deny respondent a trial de novo on his Title VII claim.

*Id.* at 795-96(internal citations omitted). Accordingly, Plaintiff's Title VII claim is not barred by the prior SPB decision.

However, the Supreme Court reached a different conclusion with respect to the claims based upon reconstruction-era civil rights statutes such as section 1981. The Court held that "Congress, in enacting the Reconstruction civil rights statutes, did not intend to create an exception to general rules of preclusion." *Id.* at 796-97. The Ninth Circuit, in applying *Elliott*, extended the rules of preclusion to "administrative adjudications of legal as well as factual issues, even if unreviewed" so long as the proceedings comply with the fairness requirements set forth in *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, (1966). *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-33 (9th Cir. 1994). These requirements are: "(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate." *Id.* at 1033.

The first requirement of the *Utah Construction* test is that the administrative agency act in a judicial capacity. The Ninth

19

Circuit explained that "the SPB certainly enjoys adjudicatory or quasi-judicial powers" such as the ability to "hold hearings" and "a limited power to subpoena witnesses." *McInnes*, 943 F.2d at 1094.  The Defendants allege, and the Plaintiff does not object, that the "SPB functioned in a quasi-judicial capacity relative to receiving, hearing, and adjudicating plaintiff's discrimination claims." Doc. 5 at 10.  California statute provides that the Plaintiff had the right to a public hearing (2 Cal. Code Reg. § 51.4), the right to representation (2 Cal. Code Reg. § 51.5), the right to conduct discovery (2 Cal. Code Reg. § 57.1), the opportunity to examine and cross-examine witnesses (2 Cal. Code Reg. § 52.6) and the right to present documentary evidence and exhibits (2 Cal. Code Reg. § 52.6) in order to substantiate his claims.  In the instant case, a SPB ALJ conducted a full adversary evidentiary hearing on all of Plaintiff's discrimination claims.  In addition, defendants Adams and Hansen testified under oath.  (Doc. 5-3 at ¶ V.)  The SPB was acting in a judicial capacity.

The second requirement is that the SPB review disputed issues of fact properly before it.  "An issue is properly before an administrative tribunal if that body has jurisdiction to decide it, a matter of state law." *Misischia*, *v. Pirie*, 60 F.3d 626, 630 (9th Cir. 1995).  Plaintiff contends that the SPB's jurisdiction "appears limited to FEHA and civil service discrimination claims...." Doc. 10 at 4.  Plaintiff is incorrect.  According to California statute, "[d]iscrimination in violation of <u>state or federal law</u> shall be prohibited in State employment practices.  All issues relating to alleged violation

of <u>Federal or State anti-discrimination laws</u> shall be resolved using the appeal process provided in Sections 54 to 54.2 inclusive." 2 Cal. Code Reg. § 547. (emphasis added). California Code of Regulations section 54 states in relevant part that "[a]ny person who believes that he or she has been discriminated against in state employment...shall have the opportunity to file a complaint with the board." The SPB has the authority to hear Plaintiff's section 1981 claim because it is a federal anti-discrimination law.

Plaintiff also alleges that he should not be bound for "mere[ly] commenc[ing]...an SPB complaint". (Doc. 10 at 5.) However, Plaintiff did more than "mere[ly] commenc[e]" the complaint; he permitted it to go to final judgment. *Id*.

Finally, *Utah Construction* requires that the parties have an adequate opportunity to litigate. In addition to acting in a judicial capacity, the state hearing must afford the adversely affected party an adequate opportunity for judicial review. *Wehrli v. County of Orange*, 175 F.3d 692, 694-95 (9th Cir. 1999). Plaintiff, citing *Wehrli*, argues that his opportunity for judicial review was inadequate. In *Wehrli*, the opportunity for judicial review was deemed inadequate because the California administrative "hearing was not recorded...and the hearing rules provided that 'the decision of the panel judge shall be final and binding on all parties and shall not be subject to judicial review.'" *Id*. at 693 (quoting Rule D(8) of the Court Personnel Rules and Regulations). Because Wehrli had no opportunity for an appellate review, the Court was concerned with the potential for "arbitrary action[s]" by judges. *Id*. at 695. *Wehrli* does not

21

1   apply because in the instant case, Plaintiff had an opportunity
2   for judicial review.

3       Plaintiff here concedes that he could have obtained a Writ
4   of Administrative Mandamus/Mandate in order to have the SPB's
5   decision reviewed and that "there is believed to be an OAH audio
6   recording of the hearing...." (Doc. 10 at 5-6.) Nonetheless,
7   Plaintiff contends that the appellate review would have been
8   inadequate, because 1) the standard for review was abuse of
9   discretion rather than de novo, and 2) there was no written
10  transcription of the hearing. *Id*.

11      Plaintiff, however, cannot point to any cases that require
12  an appellate review to be heard de novo or require a re-weighing
13  of the evidence in order to comply with the requirement of an
14  adequate opportunity to litigate. Under California Code of Civil
15  Procedure section 1094.5(b), the reviewing court can hear
16  questions challenging jurisdiction, the fairness of the trial,
17  and whether there was any prejudicial abuse of discretion. Cal.
18  Code Civ. Pro. § 1094.5(b). See *Merrill v. Dep't of Motor*
19  *Vehicles*, 71 Cal. 2d 907, 913 (Cal. 1969); *see also Zuniga v. Los*
20  *Angeles County Civil Serv. Comm'n*, 137 Cal. App. 4th 1255, 1259
21  (Cal. Ct. App. 2006). In addition, "where the transcript is
22  necessary to a proper review of the administrative proceedings,
23  the cost of preparing the transcript shall be borne by the
24  respondent." Cal. Code Civ. Pro. § 1094.5(a). The Plaintiff
25  could have established a record and requested appellate review.
26  Thus the third requirement of the *Utah Construction* test is
27  satisfied.

28  //

22

### iii) Res Judicata - CA State Law

After satisfying the *Utah Construction* test, the federal courts are to look at state law in order to determine whether the administrative decision would be given preclusive effect. *Misischia*, 60 F.3d at 629. California uses the primary rights theory to determine whether a subsequent cause of action should be barred by res judicata. *Gamble v. General Foods Corp.*, 229 Cal. App. 3d 893, 898 (1991). The California Court of Appeals explained:

> [A] cause of action consists of 1) a primary right possessed by the plaintiff, 2) a corresponding primary duty devolving upon the defendant, and 3) a delict or wrong done by the defendant which consists in a breach of such primary right and duty. (citations omitted).

*Id.* Under the primary rights analysis each invasion of a primary right gives rise to a separate cause of action. *Id.* at 899 (citing *Agarwal v. Johnson*, 25 Cal. 3d 932, 945 (Cal. 1979)). "A single cause of action is based on the harm suffered, rather than the particular legal theory asserted or relief sought by the plaintiff. *Id.* (citing *Slater v. Blackwood*, 15 Cal. 3d 791, 795 (Cal. 1975)).

In *Takahashi v. Bd. of Trustees of Livingston*, 783 F.2d 848 (9th Cir. 1986), the Ninth Circuit applied California's primary right analysis to bar Takahashi's section 1981 and 1983 claims from being heard in federal court. Takahashi was a public school teacher who challenged her dismissal in front of the Commission on Professional Competence. *Id.* at 849. After the Commission ruled against her, she filed for a mandamus action in state court to compel the commission to set aside its decision. *Id.* Following an adverse judgment in the trial court, the Court of

23

Appeal found substantial evidence supported the lower court's decision that cause existed for Takahashi's dismissal.  *Id.* Takahashi then filed a section 1981 and 1983 action in federal court, alleging that she had been terminated because of her sex and ethnic origin.  *Id.*  In applying the primary rights doctrine, the Ninth Circuit court reasoned:

> Takahashi's first action was based on the invasion of her contractual right to employment by the District.  In that litigation, Takahashi challenged the Commission's finding that cause existed for the termination of her contract....In the present action, the identical primary right -- the contractual right to employment -- is at stake.

*Id.* at 851.  Because the harm suffered in both actions arose out of the same primary right, i.e., the "contractual right to employment," the subsequent action was barred.  *Id.*  *See Miller v. County of Santa Cruz*, 39 F.3d 1030 (9th Cir. 1994) (unreviewed adverse decision by county civil service commission barred plaintiff's section 1983 claim because the same primary right to "continued employment" was alleged in both claims); *see also Gamble v. General Foods Corp.*, 229 Cal. App. 3d 893 (1991) (Title VII and section 1981 suit in federal court barred state court wrongful termination claim as both cases asserted the "primary right to employment").[4]

_____

[4] The primary right at stake in the instant case appears to be the right to be free from employment discrimination.  In the context of discrimination claims, California courts are ambiguous in deciding whether the primary right at stake is based on the "right to employment" or the "right to be free from employment discrimination."  However, in a footnote, the *Gamble* court explained that:

> "In *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 433 [203 Cal.Rptr. 638], we stated that the primary right in that case was the same as that which had been

24

In *Acuna v. Regents of Univ. of California*, Acuna applied for a tenured position at the University of California Santa Barbara (UCSB) and was denied the application. 56 Cal. App. 4th 639, 643 (Cal. Ct. App. 1997). Acuna filed a Title VII and Age Discrimination In Employment (ADEA) claim for race and ethnic discrimination that was removed to federal court. *Id.* at 644. After winning in federal court, Acuna brought a FEHA claim in state court that was subsequently barred on res judicata grounds. *Id.* at 645. The trial court ruled:

> The same primary right is involved in both causes of action in the parallel state and federal proceedings. Plaintiff has a primary right to be free of invidious discrimination in selection for employment based on race, and a similar primary right in regard to discrimination based on national origin. (citations omitted). Plaintiff is entitled to one full and fair opportunity to litigate his claims under each of those causes of action, in a court of competent jurisdiction. California state law precludes a plaintiff from relitigating the same cause of action against the same defendants in state court, after a final federal judgment adverse to the plaintiff on the same cause of action.

*Id.* In affirming the trial court decision, the Court of Appeal stated "the race and ethnicity claims, whether brought under Title VII or the FEHA, arise from the same primary right: the right to be free of invidious employment discrimination." *Id.* at

> asserted in the prior federal case; i.e., the right to be free from employment discrimination based on sex. However, in Johnson, it was unnecessary to consider the actual harm or injury (the loss of employment during maternity leave). Johnson does not hold that the primary right not to be discriminated against is separate from the primary right to employment."

*Gamble*, 229 Cal. App. 3d at 901 n.4 (emphasis added). Although a direct distinction has not been made, generally, Title VII and section 1981 claims after 1995 seem to be associated with the primary right to be free from employment discrimination.

1 | 649.

2 | The claims in *Acuna* of employment discrimination are
3 | analogous to the claims made by Plaintiff. Acuna was a member of
4 | a protected class that alleged claims of racial and ethnic
5 | discrimination in his attempt to be promoted to a tenured
6 | position. Plaintiff is also a member of a protected class that
7 | alleged claims of racial discrimination in his attempt to get
8 | promoted. The underlying primary right at stake, in each
9 | scenario, is the right to be free of employment discrimination.
10 | In the SPB hearing, Plaintiff alleged that his supervisors'
11 | discriminatory treatment caused him harm. In Plaintiff's section
12 | 1981 claim, he is alleging the same discriminatory conduct caused
13 | him harm. The SPB found that Plaintiff could not establish a
14 | prima facie claim of discrimination. Because Plaintiff's primary
15 | right in the SPB hearing is the same as in his federal claims,
16 | Plaintiff's section 1981 claim should be barred.

17 | Plaintiff asserts that claim preclusion should not bar his
18 | current claim because a discrimination claim referencing the same
19 | facts presented in an earlier claim should not now bar a claim
20 | referencing those same facts. (Plaintiff's response at 7.)
21 | Plaintiff cites the dissenting opinion in *State Personnel Bd. v.*
22 | *Fair Employment & Hous. Comm'n*, 39 Cal. 3d 422 (Cal. 1985) that
23 | states:

24 | > [I]f the claim of discrimination or waiver were not
25 | > tendered in accordance with the rules of practice
26 | > before the Board, applicants have no justiciable cause
27 | > to complain of denial of substantive rights of which,
28 | > given the opportunity, they failed to avail themselves
29 | > in. [Fn, omitted.]

Plaintiff asserts that the majority rejected the dissent's

26

1  argument. *Id*. In *State Personnel Board*, the majority held that
2  state civil service employees can assert their FEHA claims before
3  the Department of Fair Employment and Housing (DFEH) in addition
4  to having the opportunity to assert their claims based on the
5  Civil Service Act in front of the SPB. *Id*. at 444. However, the
6  majority does not directly reach any issue of the res judicata
7  effect that one forum may have on another. As the concurring
8  opinion notes, the real parties in interest litigated a claim
9  that was treated as a "medical appeals" by the SPB, which is
10 separate from the discrimination claim that the parties were
11 trying to bring up in front of the DFEH. *Id*. at 445. *State*
12 *Personnel Board* does not control here.

13     Defendant argues that Plaintiff's purported "hostile work
14 environment" included within the section 1981 cause of action is
15 also barred by the SPB's prior decision because that claim "could
16 have been raised and litigated in the administrative forum had
17 plaintiff chosen to do so." Again, federal courts look to state
18 law to determine the preclusive effect of a decision.  In
19 California, "if the matter was within the scope of the action,
20 related to the subject-matter and relevant to the issues, so that
21 it could have been raised, the judgment is conclusive on it
22 despite the fact that it was not in fact expressly pleaded or
23 otherwise urged." *Sutphin v. Speik*, 15 Cal. 2d 195, 202 (1940).
24 "The reason for this is manifest. A party cannot by negligence
25 or design withhold issues and litigate them in consecutive
26 actions. Hence the rule is that the prior judgment is res
27 judicata on matters which were raised or could have been raised,
28 on matters litigated or litigable." *Id*. (cited in

1    *Aerojet-General Corp. v. Am. Express Ins. Co.*, 97 Cal. App. 4th
2    387, 401-02 (2002)).  Plaintiff raises no new factual issues here
3    that could not have been raised before the SPB and there is no
4    apparent reason why he could not have litigated the hostile work
5    environment claim in that forum.  Plaintiffs' claims under
6    section 1981 for hostile work environment are also barred by the
7    prior SPB determination.

8         Defendants' motion to dismiss the Section 1981 claim is
9    **GRANTED WITH PREJUDICE.**

10                 **iv)  Collateral Estoppel - CA State Law**
11        Defendant's assert collateral estoppel as an alternative
12   basis for dismissal of the section 1981 claim.  Plaintiff argues
13   that the issues presented in front of the SPB hearing are not
14   identical to those in the current action and therefore his
15   section 1981 claim should not be barred based on collateral
16   estoppel.  The California Supreme Court has established a
17   two-part test to evaluate the collateral estoppel effect
18   adjudicated by administrative agency determinations.  *People v.*
19   *Sims*, 32 Cal. 3d 468 (1982).  The first part of the *Sims* test
20   employs the standard the United States Supreme Court set out in
21   *Utah Construction* as discussed above.  *Eilrach v. Remas*, 839 F.2d
22   630, 633 (9th Cir. 1988).  The second part entails traditional
23   collateral estoppel criteria, barring relitigation of an issue
24   if:

25        (1) the issue necessarily decided at the previous
         [proceeding] is identical to the one which is sought to be
26        relitigated; (2) the previous [proceeding] resulted in a
         final judgment on the merits; and (3) the party against whom
27        collateral estoppel is asserted was a party or in privity
         with a party at the prior [proceeding]. [citations omitted]
28

                                    **28**

1  *Id*.  As discussed in section 2.b.ii above, the SPB proceeding
2  meets the requirements of *Utah Construction*.

3       Plaintiff contends that there is no indication that the
4  evidence taken in the SPB hearing was measured against each of
5  the elements of a cause of action under 42 U.S.C § 1981.  As
6  discussed above, in order to establish a claim under section
7  1981, a plaintiff must establish that (1) he or she is a member
8  of a racial minority; (2) the defendant intended to discriminate
9  against plaintiff on the basis of race by the defendant; and (3)
10 the discrimination concerned one or more of the activities
11 enumerated in the statute.  *Mian*, 7 F.3d at 1087.  In the SPB
12 hearing, the ALJ made the following finding of fact: "[Plaintiff]
13 failed to establish that he was not promoted in June 2004,
14 December 2004, or April 2005 because of his race."  (Doc. 5-3 Ex.
15 E. 8.)  The ALJ also reviewed the findings of fact against the
16 factors needed to satisfy a Title VII prima facie complaint and
17 found that "[Plaintiff] did not establish...that other candidates
18 with similar qualifications were appointed when he was not.  *Id*.
19 at 10.  The issue of whether Plaintiff's promotion was racially
20 motivated was decided in the SPB proceeding.  This is the same
21 issue that would need to be determined in a section 1981 claim,
22 which requires intentional discrimination by the defendant.
23 Consequently, Plaintiff's section 1981 claim is also barred by
24 collateral estoppel.

25

26                    **d.    Failure to State Facts Giving Rise to Claim
                              for Discrimination or Hostile Work
27                            Environment Under Section 1981.**

28       Defendant also argues in the alternative that Plaintiff has

1  failed to state a claim for hostile work environment.  The
2  standard for a race-based hostile work environment claim is drawn
3  from sex-based hostile work environment case law.  To be
4  actionable under section 1981 or Title VII, the working
5  environment "must both subjectively and objectively be perceived
6  as abusive."  *Manatt v. Bank of Am.*, 339 F.3d 792, 799 n.6 (9th
7  Cir. 2003).  Specifically, "...an employer's mere utterance of an
8  ethnic or racial epithet which engenders offensive feeling in an
9  employee..." does not constitute such a work environment.  *Rogers
10 v. Equal Employment Opportunity Comm'n*, 454 F.2d 234 (5th Cir.
11 1971).

12     Defendants cite *White v. Pac. Media Group, Inc.*, 322 F.
13 Supp. 2d 1101, 1110 (D. Hi. 2004), in support of the proposition
14 that Plaintiff has not properly alleged a hostile work
15 environment claim.  In that case, the district court reasoned
16 that:

17         Plaintiff has not alleged sufficient facts to support a
           prima facie case of a claim for hostile work
18         environment. In order to establish a prima facie case,
           Plaintiff must show that "(1) she was subjected to
19         verbal or physical conduct because of her race, (2) the
           conduct was unwelcome and (3) the conduct was
20         sufficiently severe or pervasive to alter the
           conditions of [Plaintiff's] employment and create an
21         abusive work environment." Manatt v. Bank of America,
           NA, 339 F.3d 792, 798 (9th Cir.2003)(internal citations
22         omitted).

23         Plaintiff has not alleged that she was subject to
           verbal or physical conduct on account of her race.
24         Instead, Plaintiff is arguing that her failure to be
           promoted or even be considered for a promotion, as well
25         as her demotion, are sufficient evidence for this court
           to infer that Defendants were treating her poorly on
26         account her race. Without any allegations of physical
           or verbal conduct, Plaintiff has not set forth a prima
27         facie case for hostile work environment.

28 In so holding, however, the district court in *White* was deciding

                                30

1 | a motion for summary judgment, not a motion to dismiss.
2 | Plaintiffs in federal civil rights cases are not required to
3 | plead a prima facie case at the motion to dismiss stage.  *See*
4 | *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)("The prima
5 | facie case under McDonnell Douglas...is an evidentiary standard,
6 | not a pleading requirement.").  Defendants' alternative argument
7 | that dismissal is warranted for failure to state a claim is not
8 | well founded.

3. **Count Three (FEHA).**

    a. **Article 1, Section 8 of the California Constitution Does Not Apply to the Conduct Alleged in this Case.**

The third count in the complaint alleges that "Defendant CDCR violated Plaintiff's rights under Article 1 § 8 of the California Constitution..."  Defendant moves to dismiss on the grounds that this provision does not reach the conduct alleged in this case.  Article 1 § 8 of the California Constitution provides that "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."  The Ninth Circuit has acknowledged that, although this language reaches conduct which results in the complete exclusion of an individual from employment (i.e., resulting in termination constructive discharge, or the threat of termination), it does not reach discriminatory conduct during an ongoing employment relationship.  *Strother v. S. Cal. Permanente Med. Group*, 79 F. 3d 859, 871-73 (9th Cir. 1996).  Here, the only discriminatory conduct alleged concerns the denial of timely performance

31

1 evaluations, educational opportunities, and promotional
2 opportunities. Article 1 section 8 of the California
3 constitution does not reach any of these categories of conduct.

4                    **b.    Exhaustion of Administrative Remedies.**

5     FEHA provides that it "shall be an unlawful employment
6 practice...[fo]r an employer, because of the race... [or]
7 color...of any person, to refuse to hire or employ the person or
8 to refuse to select the person for a training program leading to
9 employment, or to bar or to discharge the person from employment
10 or from a training program leading to employment, or to
11 discriminate against the person in compensation or in terms,
12 conditions, or privileges of employment." Cal. Gov. Code §
13 12940(a).

14     Prior to filing suit under FEHA, an employee must file an
15 administrative complaint with the California Department of Fair
16 Employment and Housing ("DFEH"), and thereafter receive a right
17 to sue notice. Cal. Gov. Code § 12960(b). Any such
18 administrative complaint must be filed within one year of the
19 allegedly unlawful employment practice.

20     Here, the complaint alleges in a conclusory fashion that
21 "plaintiff has properly exhausted his administrative remedies and
22 met pertinent pre-conditions to filing suit under FEHA, by filing
23 a complaint with, and receiving a "Right to Sue letter from
24 [DFEH]." (Compl. at ¶8.) Defendants assert that the burden of
25 proving administrative exhaustion rests with Plaintiff, citing
26 *Westinghouse Elec. Corp. v. County of Los Angeles*, 42 Cal. App.
27 3d 32, 37 (1974). Defendant then cites cases applying California
28 pleading standards in support of the proposition that dismissal

1  is warranted when a complaint merely pleads the conclusion that
2  Plaintiff has exhausted his administrative remedies. But, a
3  federal court presiding over a California claim in a diversity
4  action may not apply California procedural standards when they
5  directly conflict with the Federal Rules of Civil Procedure.
6  Federal Rule of Civil Procedure 8's liberal pleading standard
7  controls here. The Complaint pleads exhaustion sufficiently to
8  survive a motion to dismiss.

9

10          **c.  Res Judicata.**

11      Defendant argues in the alternative that the SPB
12  determination should be given preclusive effect as to the FEHA
13  claim. A federal court can apply res judicata to a state
14  administrative decision, if a state court in the underlying
15  action would have given preclusive effect to that decision.
16  *Elliott*, 478 U.S. 788. To determine whether a subsequent cause
17  of action should be barred by res judicata, California uses the
18  primary rights theory. *Gamble*, 229 Cal. App. 3d at 898.

19      As in the section 1981 claim, the primary rights involved in
20  Plaintiff's FEHA claim is the right to be free from employment
21  discrimination. In *Acuna v. Regents of Univ. of California*,
22  Acuna filed a FEHA claim in state court that was barred because
23  of his prior Title VII and Age Discrimination In Employment
24  (ADEA) claim for race and ethnic discrimination. *Acuna*, 56 Cal.
25  App. 4th 639. *Acuna* is analogous to the instant case. In
26  Plaintiff's SPB hearing, the ALJ noted that the Board "looks for
27  guidance to Title VII of the Civil Rights Act of 1964...and the
28  Fair Employment and Housing Act...and court and administrative

**33**

decisions that have applied these laws." Doc. 5-3 Ex. E. 8. The current FEHA claim is based on alleged discriminatory conduct arising in the context of a promotion. Because the primary right at stake in both proceedings are the same, Plaintiff's FEHA claim should be barred.

Plaintiff argues that the SPB findings should not bar his FEHA claim because:

> preclusion of adjudication at the outset would be inappropriate, because the issues presented to the Board and the FEHC will not often be identical and because the statutory schemes under which they operate serve different public policies.

Plaintiff's Response at 7 (quoting *State Personnel Bd. v. Fair Employment & Hous. Comm'n*, 39 Cal. 3d 422 (Cal. 1985). However, the California Supreme Court did not rule out the possibility that a SPB claim can be preclusive to a claim brought before the FEHC. The California Supreme Court explained that "[i]f the FEHC is satisfied that a particular issue presented to it was sufficiently explored and decided by the Board, then it may, in comity, bar relitigation of the issue." *State Personnel Board,* 39 Cal.3d at 443. Because in the instant case, the issues presented in both cases are the same, relitigation is barred.[5]

---

[5] Plaintiff also argues that the California Supreme Court has found that "the California state legislature made a choice to afford both the remedies of the Civil Service Act and the FEHA to members of the state civil service." Plaintiff's Response at 7-8 (quoting *State Personnel Board v. Fair Employment & Housing Commission*, 39 Cal.3d 422 (1985). The court made this statement in the context of deciding whether the FEHC has jurisdiction to hear discrimination claims by civil servants. Hence, this statement does not address the issue of res judicata, but rather, it addresses the jurisdictional reach of the FEHC. Plaintiff's argument is misplaced.

34

1    Accordingly, Defendants' motion to dismiss the FEHA claim is
2  **GRANTED WITH PREJUDICE.**

3

4         **d.    Liability of Defendants Adams and Hansen.**

5    Managerial and/or supervisory personnel cannot be
6  individually or personally liable to an employee under FEHA, even
7  under an aiding and abetting theory. *Reno v. Baird*, 18 Cal. 4th
8  640, 656 (1998). Defendants Adams and Hansen cannot be liable
9  under FEHA.

10

11              **V.    CONCLUSION**

12    For the reasons set forth above, Defendants motion to
13  dismiss is **GRANTED WITH PREJUDICE** as to the second (section 1981)
14  and third (FEHA) claims and **DENIED** as to the first claim (Title
15  VII).

16

17  **SO ORDERED.**

18  **DATED:   August 23, 2006.**

19

20                          Oliver W. Wanger
21                  **UNITED STATES DISTRICT JUDGE**

22

23

24

25

26

27

28

                              **35**