1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SPENCER PETERSON III,** | **1:06-CV-00349 OWW LJO** |
| **Plaintiff,** | **ORDER DENYING DEFENDANT'S** |
| **v.** | **MOTION FOR SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS (DOC. 20)** |
| **STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, RONALD HANSEN, DERRAL ADAMS, AND DOES 1-20,** | |
| **Defendants.** | |

## I.   INTRODUCTION

This is an employment discrimination case filed by Spencer Peterson III ("Plaintiff"), a California Correctional Officer, against the California Department of Corrections and Rehabilitation ("CDCR")[1] and two of Plaintiff's former supervisors, Ronald Hansen and Derral Adams (collectively "Defendants").  On March 28, 2006, Defendants removed this case from Superior Court for the County of Kings.  (Doc. 1.)

───────────────

[1]  Plaintiff occasionally refers to CDCR as "DOCR" (short for Department of Corrections and Rehabilitation).  For the sake of consistency with the complaint and prior decisions in this case, the district court will use CDCR in this memorandum decision.

**1**

1  Plaintiff essentially alleges that, because of his race, he was
2  deprived of promotional opportunities, timely performance
3  evaluations, and the opportunity to pursue a graduate degree.
4  The original complaint raised claims under (1) Title VII of the
5  Civil Rights Act of 1964, (2) 42 U.S.C. § 1981, and (3) and
6  California's Fair Employment and Housing Act, Cal. Gov. Code §
7  12940 et seq.  The second and third claims were dismissed,
8  leaving only the Title VII claim.  (Doc. 17.)  CDCR now moves for
9  summary judgment on statute of limitations grounds, arguing that
10 Plaintiff filed this lawsuit more than six months after receiving
11 his 90 day right-to-sue notice.  (Doc. 20 at 2.)  Plaintiff does
12 not dispute the timing of his filing.  Rather, he asserts that
13 the statute of limitations should be equitably tolled because
14 (a) he was led to believe that filing a case before the State
15 Personnel Board ("SPB") was a necessary prerequisite to suit, and
16 (b) he filed suit within thirty (30) days of SPB's issuance of a
17 decision denying his request for re-hearing.  (Doc. 22. at 2.)

18
19                    **II.   <u>BACKGROUND</u>**

20      Plaintiff is an African-American resident of Visalia,
21 California.  (*See* Compl. at ¶3.)  In 1986, Plaintiff began
22 working for CDCR at the California Medical Facility, in
23 Vacaville, California, where he maintained an "exemplary"
24 employment record.  (Compl. at ¶9.)  In 1997, he was transferred
25 to a position within the Substance Abuse Treatment Facility
26 ("SATF") in Corcoran, California.  (*Id.* at ¶10.)  While at
27 Corcoran, Plaintiff was promoted to the rank of Correctional
28 Sergeant.  (*Id.* at ¶11.)

**2**

Beginning in March 2004, Plaintiff asserts that he "began to suffer racially discriminatory employment practices." (*Id.* at ¶12.)  Specifically, the complaint alleges three types of discriminatory activity occurred.  First, the complaint alleges that Defendant Hansen refused to "approve or sign" plaintiff's regular performance evaluation:

> [I]n November 2003, plaintiff's supervisor conducted plaintiff's regular performance evaluation, submitting plaintiff's evaluation up the chain of command to Custody Captain, defendant Ron Hansen, for his approval pursuant to established CDCR practice/procedure. Without justification or explanation, defendant Hansen refused to approve or to sign plaintiff's evaluation. Plaintiff is informed and believes that the evaluation remains unsigned and unapproved by defendant Hansen, as of the date of filing of this complaint.

(*Id.* at ¶12a.)  Second, the complaint alleges that Defendant Adams refused to approve Plaintiff's request to pursue a graduate degree:

> [O]n February 4, 2004, without justification or explanation, defendant Warden Derral Adams refused to sign an Endorsement form required in order for plaintiff to be admitted to a Doctoral educational program through the University of LaVerne, for which plaintiff was otherwise qualified and admitted. Plaintiff submitted this Endorsement form to defendant Warden Adams on three separate occasions; nevertheless, defendant Warden Adams remained steadfast in his refusal to sign the form.  Defendant Warden Adams' refusal to sign the plaintiff's Endorsement form caused a delay in plaintiff's entry into the Doctoral program of approximately a year, in turn resulting in monetary damages, and other damages including lost opportunity costs, to plaintiff.

(*Id.* at ¶12b.)  Finally, the complaint alleges that on various occasions Plaintiff was either passed over for promotion to Lieutenant or was denied the opportunity to apply for a promotion, despite being qualified to serve as a Lieutenant.

**3**

On March 16, 2004, plaintiff interviewed for promotion to Correctional Lieutenant.  Although plaintiff was rated as competitive, he was denied the promotion. On June 17, 2004, plaintiff again interviewed for promotion to Correctional Lieutenant.  Again plaintiff rated well; again he was denied the promotion.

On December 6, 2004, plaintiff again interviewed for promotion to Correctional Lieutenant.  Defendant Hansen sat as head of the promotions panel for this promotional opportunity.  Although all interviews, including those earlier interview(s) in which plaintiff had rated competitive, and although plaintiff performed better than he had in the prior, March 16, 2004 interviews, Defendant Hansen's panel inaccurately rated plaintiff as non-competitive; thereafter and thereupon, candidates other than plaintiff, who were not African-American, and who were in truth less qualified for the position than was plaintiff, were promoted instead of plaintiff.

On April 14, 2005, CSATF conducted interviews for Correctional Lieutenant.  Defendants CDCR, plaintiff believes, defendants Adams and/or Hansen participated in causing plaintiff to not be notified that these Lieutenant's position interviews were occurring, and thereby caused plaintiff to be improperly excluded from participating in these interviews, although plaintiff had properly applied for the position and had properly requested, as part of that application process, to be included among the interviews.

(*Id.* at ¶12c-f.)

On April 28, 2005, Plaintiff filed a race discrimination complaint with CDCR's Office of Civil Rights, complaining that he was not "given equal consideration for promotional advancement," that the Custody Captain refused to sign his employee performance evaluation, and that the Warden refused to allow him to enroll in the Doctoral program.  (*See* Doc. 5-3 at ¶I and Ex. A.)

On May 11, 2005, CDCR's Discrimination Investigations Unit responded in writing to Plaintiff's April 28, 2005 complaint. CDCR concluded that the allegations did "not warrant an Equal Employment Opportunity (EEO) investigation at this time," and informed Plaintiff of his appeal rights:

**4**

1
2
3
4

> If you wish to appeal our decision, you must file your complaint with the State Personnel Board, Appeals Division...within 30 days of receipt of this letter. You may also present your complaint to the California Department of Fair Employment and Housing and/or the U.S. Equal Employment Opportunity Commission.

(Plaintiff's Exh. B.)

5
6
7
8

On May 25, 2005, Plaintiff appealed CDCR's decision to the State Personnel Board ("SPB"). (*See* Doc. 5-3, ¶¶ III, IV & XI and Ex. C & D.)

9
10
11
12

On June 6, 2005, before action was taken on his SPB appeal, Plaintiff filed a similar complaint with the EEOC's Fresno office, asserting that his rights under Title VII of the Civil Rights Act of 1964 had been violated by CDCR's conduct.

13
14
15
16
17
18
19
20
21
22

On July 11, 2005, Plaintiff received a letter from California's Department of Fair Employment and Housing ("DFEH"), explaining that the EEOC had "referred" Plaintiff's EEOC complaint to DFEH. (Doc. 20, Ex. 2.)  Nevertheless, DFEH explained, DFEH would not be responsible for processing the complaint.  That responsibility would remain with the EEOC. Accordingly, DFEH explained that it was closing Plaintiff's case "on the basis of 'processing waived to another agency.'" (*Id*.) DFEH further explained that its letter would serve as Plaintiff's "right-to-sue notice."  In pertinent part, the letter states:

23

### NOTICE TO COMPLAINANT OF RIGHT-TO-SUE

24
25
26
27
28

> Since DFEH will not be issuing an accusation; this letter is also your right-to-sue notice.  According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer labor organization or employment agency named in the above-referenced complaint.  The lawsuit may be filed in a State of California Superior or Justice Court. Government Code section 12965, subdivision (b),

**5**

provides that such a civil action must be brought
within one year from the date of this notice.  Pursuant
to Government Code section 12965, subdivision (d)(1),
this one-year period will be tolled during the pendency
of the EEOC's investigation of your complaint.  You
should consult an attorney to determine with accuracy
the date by which a civil action must be filed.  The
right to file a civil action may be waived in the event
a settlement agreement is signed.  **Questions about the
right to file under federal law should be referred to
the EEOC.**

The DFEH does not retain case records beyond three
years after a complaint is filed.

<u>Remember: The Right-To-Sue Notice allows you to file a
private lawsuit in State court</u>.

Sincerely,
Wanda J. Kirby
Deputy Director
Enforcement Division.

(underlining in original, bold emphasis added).

On August 9, 2005, the Department of Justice declined to
pursue Plaintiff's claim and sent him a notice of his right to
sue within 90 days.  The letter states, in its entirety

Dear Mr. Peterson, III:

Because you filed the above charge with the Equal
Employment Opportunity Commission, and the Commission
has determined that it will not be able to investigate
and conciliate that charge within 180 days of the date
the Commission assumed jurisdiction over the charge and
the Department has determined that it will not file any
lawsuit(s) based thereon within that time, and because
you have specifically requested this Notice, <u>you are
hereby notified that you have the right to institute a
civil action under Title VII of the Civil Rights Act of
1964, as amended, 41 U.S.C. 2000e, et seq., against the
above-named respondent</u>.

<u>If you choose to commence a civil action, such
suit must be filed in the appropriate Court within 90
days of your receipt of this Notice</u>.  If you cannot
afford or are unable to retain an attorney to represent
you, the Court may, at its discretion, assist you in
obtaining an attorney.  If you plan to ask the Court to
help you find an attorney, you must make this request
of the court in the form and manner it requires.  Your
request to the court should be made well before the end

**6**

1   of the time period mentioned above.  A request for
2   representation does not relieve you of the obligation
    to file suit within this 90-day period.

3       This Notice should not be taken to mean that the
    Department of Justice has made a judgment as to whether
4   or not your case is meritorious.

5                               Sincerely,
                                Brad Schlozman
6                               Acting Assistant Attorney General
                                Civil Rights Division
7                               by Karen L. Ferguson
                                Supervisory Civil Rights Analyst
8                               Employment Litigation Section.

9   cc:  San Francisco District Office, EEOC
         California Dept. of Corrections
10

11  (emphasis added).

12      Meanwhile, Plaintiff's SPB action, filed on May 25, 2005,

13  was still pending.  On August 30, 2005, a SPB administrative law

14  judge conducted a full adversary evidentiary hearing on all of

15  Plaintiff's discrimination claims.  Defendants Adams and Hansen

16  all testified under oath.  (*Id.* at ¶ V.)  On September 23, 2005,

17  the ALJ wrote a proposed decision, ruling that Plaintiff failed

18  to establish a prima facie claim of race discrimination and

19  granting defendants' motion to dismiss.  (*Id.* at ¶ VI.)  The SPB

20  adopted the ALJ's proposed decision as its own on October 3,

21  2005.  (*Id.* at ¶ VII.)

22      On November 4, 2005, Plaintiff filed a request for rehearing

23  of the SPB's decision.

24      In early November 2005, the 90-day statute of limitations

25  for filing Plaintiff's federal civil rights claim expired.

26      On January 27, 2006, Plaintiff's request for re-hearing of

27  the SPB's decision was denied.  Under California Government Code

28  section 11519(a) the SPB's decision became final on February 26,

**7**

1  2006.  (*Id*. at ¶X.)  Plaintiff had thirty days to seek judicial

2  review.  Cal Gov. Code § 11523.

3     Plaintiff filed suit in the Superior Court for the County of

4  Kings on March 28, 2005, within the thirty day time limit set

5  forth in section 11523, but, as discussed, not within the 90 day

6  time limit set forth in the EEOC's Notice of right-to-sue letter.

7

8                    **III.**  **STANDARD OF REVIEW**

9     Summary judgment is warranted only "if the pleadings,

10 depositions, answers to interrogatories, and admissions on file,

11 together with the affidavits, if any, show that there is no

12 genuine issue as to any material fact."  Fed. R. Civ. Pro. 56(c);

13 *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

14 Therefore, to defeat a motion for summary judgment, the non-

15 moving party must show (1) that a genuine factual issue exists

16 and (2) that this factual issue is material.  *Id*.  A genuine

17 issue of fact exists when the non-moving party produces evidence

18 on which a reasonable trier of fact could find in its favor

19 viewing the record as a whole in light of the evidentiary burden

20 the law places on that party.  *See Triton Energy Corp. v. Square*

21 *D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v.*

22 *Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  Facts are

23 "material" if they "might affect the outcome of the suit under

24 the governing law."  *Campbell*, 138 F.3d at 782 (quoting *Anderson*,

25 477 U.S. at 248).

26    The nonmoving party cannot simply rest on its allegations

27 without any significant probative evidence tending to support the

28 complaint.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

**8**

1  2001).

2              [T]he plain language of Rule 56(c) mandates the
               entry of summary judgment, after adequate time
3              for discovery and upon motion, against a party
               who fails to make a showing sufficient to
4              establish the existence of an element essential
               to the party's case, and on which that party
5              will bear the burden of proof at trial.  In such
               a situation, there can be "no genuine issue as
6              to any material fact," since a complete failure
               of proof concerning an essential element of the
7              nonmoving party's case necessarily renders all
               other facts immaterial.

8

9  *Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more

10 implausible the claim or defense asserted by the nonmoving party,

11 the more persuasive its evidence must be to avoid summary

12 judgment.  *See United States ex rel. Anderson v. N. Telecom,*

13 *Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the

14 evidence must be viewed in a light most favorable to the

15 nonmoving party.  *Anderson*, 477 U.S. at 255.  A court's role on

16 summary judgment is not to weigh evidence or resolve issues;

17 rather, it is to determine whether there is a genuine issue for

18 trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th

19 Cir. 1996).

20

21                    **IV.  DISCUSSION**

22     Plaintiff's only remaining claim is brought pursuant to

23 Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-

24 2(a)(1), which makes it unlawful for an employer "to discriminate

25 against any individual with respect to his compensation, terms,

26 conditions, or privileges of employment, because of such

27 individual's race...."  A person claiming to be aggrieved by an

28 unlawful employment practice may file a complaint with the Equal

**9**

1  Employment Opportunity Commission.  *See* 42 U.S.C. § 2000e-5(b).
2  The EEOC may thereafter choose to pursue the matter or may
3  dismiss it after an investigation, if there is no "reasonable
4  cause to believe that the charge is true..."  *Id*.  If the matter
5  is dismissed, the EEOC must "promptly notify the person claiming
6  to be aggrieved and the respondent of its action."  *Id*.  Upon
7  receipt of notice of dismissal, the aggrieved party has ninety
8  days within which to file a civil action:

> If a charge filed with the Commission pursuant to
> subsection (b) of this section is dismissed by the
> Commission...the Commission...shall so notify the
> person aggrieved and within ninety days after the
> giving of such notice a civil action may be brought
> against the respondent named in the charge...by the
> person claiming to be aggrieved....

13  42 U.S.C. § 2000e-5(f)(1).
14      Here, it is undisputed that the United States Department of
15  Justice notified Plaintiff on August 9, 2005, by certified mail,
16  that he had ninety days within which to sue.  That ninety day
17  notice period would have expired some time in early to mid-
18  November, three months later.  Plaintiff did not file his lawsuit
19  until March 28, 2006, six and one-half months after receiving the
20  90 day right-to-sue letter from the EEOC.  Plaintiff does not
21  dispute the timing of his filings in relation to the various
22  deadlines.  However, he submits that his untimeliness should be
23  excused by the application of either state or federal equitable
24  tolling doctrines.
25  //
26  //
27  //
28  //

10

1

**A.    <u>Equitable Tolling</u>**.

2

Title VII's statute of limitations "is not a jurisdictional

3

requirement; it may be waived, and equitably tolled." *Sloan v.*

4

*West*, 140 F.3d 1255, 1262 (9th Cir. 1998).  Plaintiff asserts

5

that his case should be deemed timely filed under <u>either</u>

6

California or Federal equitable tolling principles.

7

**1.    Application of California Equitable Tolling
Doctrine**.

8

9

Plaintiff suggests that California's equitable tolling

10

doctrine may be applied to his Title VII claim.  (Plaintiff

11

dedicates the bulk of his opposition brief to discussing why

12

Plaintiff's circumstances satisfy California's equitable tolling

13

doctrine.)  As a threshold matter, however, Plaintiff is mistaken

14

about the applicability of California's equitable tolling

15

doctrine to a Title VII claim.  Plaintiff cites a number of cases

16

in which state tolling doctrines are applied to federal claims,

17

but none involving Title VII.  This is because state tolling

18

doctrines are only applicable to federal claims that borrow

19

statute of limitations periods from state law.  For example,

20

because neither 42 U.S.C. § 1981 nor 42 U.S.C. § 1983 contain

21

their own statutes of limitation, the applicable limitations

22

period is borrowed from state law.  *Donoghue v. Orange County*,

23

848 F.2d 926, 930 (9th Cir. 1987).  In that context, state

24

tolling doctrines may be applied to federal claims.  *Id.*[2]

25

[2]    The two cases cited by Plaintiff in support of applying

26

the California tolling doctrine involve federal causes of action
without their own statutes of limitations.  *Alberti v. City and*

27

*County of San Francisco*, 32 F. Supp. 2d 1164, 1172 (1998),
concerns Title II of the Americans with Disabilities Act, to

28

which the court applied California's one-year statute of
limitations for personal injury actions because there is no

**11**

However, where the applicable federal statute already has its own statute of limitations, state tolling doctrines do not apply. *See id.* at 930 n.3 (refusing to apply California's state tolling doctrine to a claim brought under 42 U.S.C. § 1986, which contains its own one-year statute of limitations).  "When Congress has provided a federal statute of limitations for a federal claim...state tolling provisions are not applicable." *Brown v. Hartshorne Public School Dist. No. 1*, 926 F.2d 959, 961 (10th Cir. 1991) (refusing to apply state tolling doctrine to Title VII claim) (*citing Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 140 (6th Cir. 1988); *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 759 n.2 (8th Cir. 1983)).  State tolling doctrines do not apply to Title VII claims.

   **B.    Application of the Federal Tolling Doctrine.**

           **1.    Threshold Issue: Does The Strict Construction Rule Apply to State Government Entities?**

   Defendant cites *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 93-94 (1990), for the proposition that because the statute of limitations contained within Title VII is "a condition on the [government's] waiver of sovereign immunity [it] must be

---

statute of limitations provided by Congress.  Similarly, in *Donoghue*, 848 F.2d at 930 & n.3, the Ninth Circuit applied state tolling doctrines to § 1983 and § 1985 claims, both of which borrow statutes of limitations from state law, but not to a § 1986 claim, which contains its own statute of limitations. Finally, *Retail Clerks Union Local 648, AFL-CIO v. Hub Pharmacy Inc.*, 707 F.2d 1030, 1033 (9th Cir. 1983), concerned claims brought under § 301 of the National Labor Relations Act, which also looks to state law for the applicable statute of limitations and, accordingly, to state law for equitable tolling doctrines. *Id.* at 1034.

1   strictly construed."  *Irwin*, however, was a suit brought by an
2   individual against a <u>federal</u> government agency.  Here, Plaintiff
3   brings a Title VII action against a state government entity.  The
4   federal government <u>voluntarily waived</u> its sovereign immunity when
5   Congress passed the Civil Rights Act of 1964.  Under such
6   circumstances, courts apply a canon of statutory construction --
7   sometimes called the "sovereign immunity canon" -- that requires
8   all waivers of sovereign immunity to be read narrowly in favor of
9   the sovereign.  *See Irwin,* 498 U.S. at 94; *United States v.*
10  *Nordic Village, Inc.,* 503 U.S. 30, 34 (1992) (waiver of sovereign
11  immunity "must be construed strictly in favor of the sovereign"
12  and "not enlarge[d]...beyond what the language requires").  In
13  contrast, the States did not consent (at least not directly) to
14  application of the Civil Rights act of 1964 to state government
15  entities.  Rather, Congress validly <u>abrogated</u> the states'
16  sovereign immunity, to apply the terms of Title VII to the
17  states.  *See Jones v. Washington Metro. Area Transit Auth.*, 205
18  F.3d 428, 434 (D.C. Cir. 2000).  Defendant cites no authority for
19  the proposition that the sovereign immunity canon applies to
20  provide additional protection to state entities under Title VII.
21  *Cf. id.* (suggesting that the so-called "no-interest rule," under
22  which interest can be awarded against the United States only
23  pursuant to an express waiver of immunity from interest, does not
24  apply to the states; "abrogation of the states' Eleventh
25  Amendment immunity does not require the same level of
26  specificity").
27  //
28  //

1           **2.   Analysis.**

2        There is no question that the ninety-day period within which

3   to file a civil action after dismissal of the charge by the EEOC

4   is a statute of limitations subject to the federal equitable

5   tolling doctrine.  *Nelmida* v. *Shelly Eurocars, Inc.*, 112 F.3d 380

6   (9th Cir. 1997).  As a general rule, to determine whether

7   equitable tolling is available in a particular case, a court must

8   examine "whether congressional purpose is effectuated by tolling

9   the statute of limitations in given circumstances."  *Valenzuela*

10  *v. Kraft, Inc.*, 801 F.2d 1170, 1174 (9th Cir. 1986)(citing

11  *Burnett v. N.Y. Central Railroad*, 380 U.S. 424, 427 (1965)).

12  Equitable tolling is, however, to be applied "only sparingly."

13  *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990).  For

14  example, equitable tolling may be applied "where the complainant

15  has been induced or tricked by his adversary's misconduct into

16  allowing the filing deadline to pass," *id.*, or "when

17  extraordinary circumstances beyond the plaintiff's control [such

18  as severe mental incapacity], made it impossible to file a claim

19  on time," *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).

20  However, courts are generally "much less forgiving in receiving

21  late filings where the claimant failed to exercise due diligence

22  in preserving his legal rights."  *Irwin*, 498 U.S. at 96.

23       Here, as evidence of "misconduct," Plaintiff points to the

24  April 28, 2005 letter sent by CDCR's Discrimination Investigation

25  Unit to Plaintiff, denying Plaintiff's civil rights claim and

26  informing him:

27

28

**14**

> If you wish to appeal our decision, you must file your complaint with the State Personnel Board, Appeals Division...within 30 days of receipt of this letter. You may also present your complaint to the California Department of Fair Employment and Housing and/or the U.S. Equal Employment Opportunity Commission.

(Plaintiff's Exhibit B.)   This letter, Plaintiff asserts, was "wrongful" because it misled him "into a wholly unneeded SPB proceeding, knowing it [would] be so lengthy [that his] limitations periods [would] expire."   (Doc. 22 at 7.)   But this letter is not evidence of misconduct or trickery.   CDCR correctly informed him of the manner by which he could appeal their decision.   It nowhere directly suggested that he had to file an appeal with the SPB in order to exhaust his administrative remedies.

The essence of Plaintiff's claim for equitable tolling is essentially that he operated under a mistaken understanding of how he should exhaust his state administrative remedies.   He came to believe that pursuing a state appeal of CDCR's determination through the SPB was the final step he would be required to take to fully exhaust his administrative remedies.   Plaintiff explains in his declaration:

> I pursued the SPB administrative action as an alternative dispute resolution to civil litigation, for the purpose of seeking redress for [] the racially discriminatory treatment visited upon me by the CDCR upon which my complaints to EEOC and DFEH, and this suit, are based.   I also pursued all three of these proceedings in order to fulfill the mandate that I exhaust my administrative remedies prior to initiating the present lawsuit if I was unsuccessful in resolving the matter through one or another from among the SPB, the EEOC, or the DFEH proceedings.   Thus, once I pursued administratively with the SPB to the point that I understood I had to file in court to pursue it further, it was my belief that, together with the receipt of right to sue notices from EEOC and DFEH,

15

1
2

> when the SPB issued its final decision, I had finally
> accomplished what was required of me, before being
> allowed to file suit properly.

3  (Plaintiff's Decl., Doc. 24, at ¶3.)  Plaintiff suggests that his

4  confusion over the administrative exhaustion requirement, coupled

5  with CDCR's letter instructing him to file a complaint with the

6  SPB if he wished to appeal CDCR's internal decision, justifies

7  the application of equitable tolling.

8      The Ninth Circuit has applied equitable tolling in some

9  cases where the plaintiff misunderstood various aspects of the

10  complex legal scheme applicable to discrimination cases.  For

11  example, in *Valenzuela,* 801 F.2d at 1174, the plaintiff received

12  a 90-day right to sue letter from the EEOC.  801 F.2d at 1172.

13  She filed a Title VII complaint within the 90-day period, but

14  filed it in California state court, rather than federal court.

15  *Id*. at 1172-73.  The claims filed in state court were dismissed

16  for lack of jurisdiction.  Plaintiff subsequently re-filed in

17  federal court, but after the expiration of the 90-day period.

18  *Id.*  The defendant moved to dismiss on statute of limitations

19  grounds.  *Id*.  The Ninth Circuit held that initial filing in

20  state court tolled the statute of limitations because "the

21  purpose underlying the 90-day time period was satisfied.

22  [Defendant] was not confronted by a stale claim.  Nor was it

23  deprived of an opportunity to preserve the appropriate evidence."

24  *Id*. at 1175.  The *Valenzuela* court placed particular emphasis on

25  the plaintiff's diligence:

26  //

27  //

28

1

2
> Throughout these proceedings, [plaintiff] exercised great diligence, however unartfully, in pursuing her claim. Her only misfortune lay in the selection of an inappropriate forum. That selection, however, was not without a reasonable basis [because at the time of the selection, it was not clear whether federal courts had exclusive jurisdiction in Title VII cases].

3

4

5  *Id.*

6  But, *Valenzuela* is distinguishable from the instant case.

7  The plaintiff in *Valenzuela* did at least file some kind of state

8  court action within the 90-day window.  In contrast, Plaintiff

9  filed no court claims until more than six months after receiving

10  his 90-day right-to-sue notice from the EEOC.  Plaintiff asserts

11  that he thought he had to pursue his SBP appeal to its completion

12  prior to pursuing a claim in court, but Plaintiff nowhere

13  explains how he reconciles this misunderstanding with the

14  explicit instruction in the EEOC letter that he must file his

15  complaint within 90 days and with the explicit warning in the

16  letter he received from the DFEH indicating that he should

17  consult the EEOC with any questions about his right to file under

18  federal law.

19  Another potentially relevant case is *Sloan v. West*, 140 F.3d

20  1255, 1262 (9th Cir. 1998).  In that case, a federal employee was

21  terminated by the United States Army Corps of Engineers.

22  Plaintiff pursued numerous avenues for relief, including

23  initiating a complaint with the Army's Equal Opportunity Office

24  ("EEO"), alleging that he was fired because of racial animus.

25  The EEO investigator recommended a finding of no discrimination.

26  Sloan requested a hearing before the EEOC, which was subsequently

27  held.  But, before the EEOC could issue a decision, Sloan

28

**17**

requested that the matter be remanded to the Army's EEO office

for final determination, so that he could appeal his case to the

Merit System Protection Board ("MSPB") as a "mixed claim" of

civil service procedural violations and discrimination, rather

than pursuing the discrimination claim alone through the EEOC.

The EEOC remanded the case as requested, and the Army eventually

issued a finding of no discrimination.  Sloan then appealed the

EEO decision to the MSPB, which eventually ruled that it did not

have jurisdiction over the matter because no "adverse action" had

been taken against Sloan.  In the portion of the *Sloan* opinion

that is relevant here, the Ninth Circuit noted that:

> Ordinarily, if the MSPB finds it lacks jurisdiction
> over either the entire case, or over one of the claims,
> it will dismiss the complaint and/or claims; advise the
> employee to seek appropriate review of any extra-
> jurisdictional non-discrimination claims through other
> channels within the agency; and advise the employee to
> pursue any discrimination claims by filing a complaint
> with the agency EEO and otherwise exhausting
> administrative remedies pursuant to Title VII.  29
> C.F.R. § 1614.302(b) (1997).  <u>When a discrimination
> complaint is dismissed by the MSPB for lack of
> jurisdiction, the statute of limitations for **filing the
> complaint with the agency EEO** is considered to have
> been tolled by filing the complaint with the MSPB.</u>

*Id.* at 1257-58.

Here, Plaintiff's filing of the SPB appeal is somewhat

similar to Sloan's filing of the MSPB appeal.  The MSPB was

created by the Civil Service Reform Act, 5 U.S.C. § 1201 et.

seq., as a "quasi-judicial Government agency to adjudicate

Federal employee appeals of agency personnel actions."  *Id.* at

1258-59.  The SPB serves a similar function.  Among other things,

the SPB oversees California's Civil Service System.  *See*

http://www.spb.ca.gov/aboutspb.htm.  But, *Sloan* only stands for

**18**

the proposition that <u>Plaintiff's filing of his SPB appeal would</u> <u>have tolled the statute of limitations for filing his race</u> <u>discrimination complaint with the EEOC in the first place</u>. *Sloan* does not stand for the proposition that the filing of an SPB appeal tolls the deadline for filing his <u>federal</u> civil rights lawsuit once the EEOC explicitly notified him that he had 90 days within which to file his lawsuit.[3]

---

[3]   In an apparent attempt to explain his confusion over the administrative exhaustion doctrine and the various filing deadlines, Plaintiff further asserts that "he is a layperson without formal legal education or training..." (*Id.* at ¶4.) However, Plaintiff then acknowledges that he consulted with an "attorney with a pre-paid legal service about pursuing redress for the discrimination [he] suffered...."

> Pursuant to that advice, [Plaintiff] understood that [he] was required to exhaust administrative remedies prior to initiating suit with the EEOC, DFEH, and with the SPB. [He] also understood that no time limitation would bar [him] from pursuing a lawsuit until some time after [he] received right to sue letters from EEOC and DFEH and until [he] had pursued the SPB administrative matter to a point when, it would be plain, that my next available step was to file in court."

(*Id.*) Plaintiff reiterates these two points in paragraphs 5 through 7 of his declaration.

> 5. As a layperson unskilled in the law, I found the three different administrative proceedings confusing; but I tried my best to fulfill these requirements and to achieve resolution of my complaint, before filing suit. It was my confusion about the interactions between these various requirements that caused me to file with the SPB a document that I titled "EEO Complaint Appeal."

> 6. I believed that I had not fulfilled all of the prerequisites to filing my lawsuit until the point in time when I received the SPB final decision in response to my request for rehearing. At that point it was

1    Although *Valenzuela* and *Sloan* do not directly support

2  tolling in this case, they are just fact-specific examples of a

3  broader inquiry into "whether congressional purpose is

4  effectuated by tolling the statute of limitations in [the] given

5  circumstances." *Valenzuela*, 801 F.2d at 1174.  The supreme court

6  has held that Title VII as a whole has a "remedial purpose,"

7  while particular purpose of the 90-day limitations period is to

8  "give prompt notice to the employer." *Zipes v. Trans World*

9  *Airlines, Inc.*, 455 U.S. 385, 398 (1982)("By holding compliance

10  with the filing period to be not a jurisdictional prerequisite to

11

12  ───────────────

             clear to me that my next step was to file in court.

13           Thus, I filed my lawsuit on 2/27/06, which was within
             30 days after I received the SPB decision served by

14           mail from Sacramento on 01/27/06.

15           7. At all times throughout these proceedings I have

16           pursued, I believe diligently, what I believed pursuant
             to the advice I received were all the available and

17           appropriate remedial procedures.  I have done so with
             the utmost of good faith.

18

19    Although Plaintiff does appear to have pursued those
   remedies he thought necessary in good faith, Plaintiff's

20  acknowledgment that he consulted an attorney weighs against the
   application of equitable tolling.  Once a claimant retains

21  counsel, "tolling ceases because [the claimant] has gained the
   means of knowledge of [his or her] rights and can be charged with

22  constructive knowledge of the law's requirements." *Leorna v.*
   *United States Dept. of State*, 105 F.3d 548, 551 (9th Cir. 1997).

23  However, although Plaintiff acknowledges having consulted an
   attorney, he appears not to have retained one to act on his

24  behalf during the administrative process.  The extent of the
   lawyer's involvement is not clear, but it does not appear from

25  the record that Plaintiff's consultation with an attorney was
   extensive enough to charge him with constructive knowledge of the

26  nuances of the applicable administrative process.  The principle
   enunciated in *Leorna* does not control here.

27

28

**20**

filing a Title VII suit, but a requirement subject to waiver as
well as tolling when equity so requires, we honor the remedial
purpose of the legislation as a whole without negating the
particular purpose of the filing requirement, to give prompt
notice to the employer.").

Here, Plaintiff exhibited diligence in his efforts to pursue
his discrimination claims throughout the end of 2005 and early
2006.  CDCR must have been aware of these efforts, as it was a
party to the SPB appeal.  The parties received notice of the
SPB's adoption of the ALJ's decision on October 3, 2005.
Plaintiff requested rehearing on November 4, 2005, but did not
receive a response until January 27, 2006.  Although the request
for rehearing may ultimately have been unnecessary for the
purposes of exhausting his administrative remedies, Plaintiff
asserts that he thought it was required.  At the very least, CDCR
was on continuous notice of Plaintiff's efforts.

In addition, the notice Plaintiff received on May 11, 2005
from CDCR's Discrimination Investigations Unit is ambiguous, if
not confusing, as to whether Plaintiff was required to file an
appeal before the SPB prior to filing suit.  Plaintiff reasonably
relied upon the various notices he received and the advice of an
attorney to reach the conclusion that he must fully exhaust all
available administrative remedies prior to pursuing judicial
relief.

Accordingly, although this case presents a very close call,
the general remedial purposes of Title VII are served by tolling
the statute of limitations, while the specific purpose of the

**21**

1  tolling statute -- to give prompt notice to the employer -- is
2  not compromised by the exercise of equitable tolling.   CDCR's
3  motion for summary judgment is **DENIED.**

4

5                          **V.   CONCLUSION**

6       For the reasons set forth above, CDCR's motion for summary
7  judgment on statute of limitations grounds is **DENIED.**

8

9  IT IS SO ORDERED.

10 **Dated:   November 15, 2006**              **/s/ Oliver W. Wanger**
   b2e55c                            UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28