# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER PETERSON III, | CASE NO. CV F 06-0349 LJO TAG |
| Plaintiff, | **SUMMARY ADJUDICATION DECISION** (Doc. 42.) |
| vs. | |
| STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant. | |

## INTRODUCTION

In this employment discrimination action, defendant California Department of Corrections and Rehabilitation ("CDC") seeks summary adjudication that plaintiff Spencer Peterson III ("Mr. Peterson") failed to timely exhaust and sufficiently describe in an administrative complaint alleged discriminatory acts to bar Mr. Peterson's related claims in this action. This Court considered CDC's summary adjudication motion on the record[1] and VACATES the May 21, 2007 hearing pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court GRANTS CDC summary adjudication to bar Mr. Peterson's untimely exhausted and insufficiently described claims.

---

[1] This Court carefully reviewed and considered all arguments, points and authorities, declarations, depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument, document, paper or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material and appropriate for summary adjudication.

1

# BACKGROUND

## Alleged Discrimination

Mr. Peterson is black and since 1986 has worked for CDC as a corrections officer. Mr. Peterson was promoted to sergeant in 1999.

Mr. Peterson proceeds on his remaining cause of action under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq., to allege CDC discriminated against him on basis of race by refusing to promote him to correctional lieutenant. Mr. Peterson's complaint alleges the following specific discriminatory incidents:

1. In November 2003, Custody Captain Ron Hansen refused to approve or sign Mr. Peterson's performance evaluation completed by Mr. Peterson's supervisor;
2. On February 4, 2004, CDC Warden Derral Adams refused to sign an endorsement form to admit Mr. Peterson into a doctoral educational program;
3. On March 16, 2004, June 17, 2004 and December 6, 2004, Mr. Peterson interviewed for but was denied promotion to correctional lieutenant; and
4. CDC failed to notify Mr. Peterson of April 14, 2005 interviews for correctional lieutenant to exclude Mr. Peterson from the interviews.

## Pursuit Of Mr. Davis' Claims

On June 28, 2005, the San Francisco District Office of the Equal Employment Opportunity Commission ("EEOC") received Mr. Davis' June 23, 2005 Charge of Discrimination (numbered 370-2005-02068) ("EEOC charge"). In his EEOC charge, Mr. Peterson alleged: "Throughout the tenure of my employment, I have been denied a promotion to Correctional Lieutenant, most recently on April 14, 2005. I have complained about this discriminatory practice but to no avail." Mr. Peterson further noted: "I believe I have been retaliated and discriminated against because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended." With its July 11, 2005 notice, the California Department of Fair Employment and Housing ("DFEH") informed Mr. Peterson that EEOC "will be responsible" to process his EEOC charge and that DFEH "will not be conducting an investigation into this matter" and "is closing its case on the basis of 'processing waived to another agency.'"

On February 27, 2006, Mr. Peterson filed his civil action in Kings County Superior Court to

allege Title VII racial discrimination. CDC removed the action to this Court. CDC seeks summary adjudication that all but the most recent April 14, 2005 alleged discriminatory act (failure to notify of interviews) are barred by failure to exhaust timely administrative remedies before EEOC.

## DISCUSSION

### Summary Judgment/Adjudication Standards

F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment in the party's favor upon all or any part thereof." Summary judgment/adjudication is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment/adjudication, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its

ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Under F.R.Civ.P. 56(c), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues

but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

Mr. Peterson does not challenge meaningfully the material facts raised by CDC.  As discussed below, CDC demonstrates that, as a matter law, all but the most recent April 14, 2005 alleged discriminatory act (failure to notify of interviews) are barred by failure to exhaust timely administrative remedies before EEOC.

## Timely Exhaustion Of EEOC Remedies

CDC contends that Mr. Peterson timely pursued before EEOC only April 14, 2005 alleged discriminatory act of failure to notify Mr. Peterson of correction lieutenant interviews.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-5(a).  Title VII empowers the EEOC "to prevent any person from engaging in any unlawful employment practice." 42 U.S.C. § 2000e-5(a).  Title VII requires the EEOC to serve notice of discrimination charges:

> Whenever a charge is filed by . . . a person claiming to be aggrieved . . . alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve notice of the charge . . . on such employer . . . .  Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. . . .

42 U.S.C. § 2000e-5(b).

Title VII further addresses filing discrimination charges with an authorized state agency:

> In the case of an alleged unlawful employment practice occurring in a State . . . which has a State . . . law prohibiting the unlawful employment practice alleged and establishing or authorizing a State . . . authority to grant or seek relief from such practice . . . no charge may be filed under subsection (a) [42 U.S.C. § 2000e-5(a)] of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State . . . law . . .

42 U.S.C. § 2000e-5(c).

CDC argues that 42 U.S.C. § 2000e-5(c) requires an aggrieved employee to delay to file an

EEOC charge until sixty days after filing a state agency charge. CDC points out California's broad anti-discrimination provisions under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §§ 12900, et seq., and to DFEH as the agency authorized under FEHA to address discrimination claims. CDC concludes that under 42 U.S.C. § 2000e-5(c), DFEH is authorized "to grant or seek relief" for unlawful employment practices. CDC turns to the 42 U.S.C. § 2000e-5(e)(1) deadline to file an EEOC charge:

> A charge under this section shall be filed within **one hundred and eighty days after the alleged unlawful employment practice occurred** . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State . . . agency with authority to grant or seek relief from such practice . . . such charge shall be filed by . . . the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . (Bold added.)

CDC notes that Mr. Peterson filed his EEOC charge on June 28, 2005 without first filing a DFEH charge to invoke 300-day exhaustion period under 42 U.S.C. § 2000e-5(e)(1). "The net effect of sections 2000e-5(c) and 2000e-5(e) is that a complainant who wishes to file a charge of discrimination with the EEOC must file the charge with the appropriate state or local agency within 240 days of the alleged discriminatory conduct in order to ensure that the charge may be filed with the EEOC within the 300-day limit." *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1473-1474 (9th Cir. 1989). "A plaintiff must file a charge within 180 days after the unlawful employment practice occurred if filing directly with the EEOC, or within 300 days if filing with a state agency possessing the authority to process and remedy such claims under state law. 42 U.S.C § 2000e-5(e)." *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1193 (9th Cir. 2003). In *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070 (2002), the U.S. Supreme Court explained:

> Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300[2] days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

---

[2] As CDC notes, the 300-day filing limit is inapplicable in the absence of Mr. Peterson filing a DFEH charge prior to his EEOC charge.

1    CDC reasons that the 180-day exhaustion period of 42 U.S.C. § 2000e-5(e)(1) applies to limit
2    plaintiff to pursue alleged CDC discriminatory acts occurring no sooner than December 29, 2004 (180
3    days prior to June 28, 2005) and thus to bar all but the April 14, 2005 alleged failure to notify Mr.
4    Peterson of correctional lieutenant interviews. CDC concludes that Mr. Peterson failed to timely pursue
5    with EEOC alleged discriminatory acts arising prior to December 29, 2004.

6    Mr. Peterson claims that he is entitled to the 300-day exhaustion period based on his unverified
7    May 21, 2005 memorandum ("May 21 memorandum") to the "State Personnel Board, Appeals
8    Division." The May 21 memorandum states: "This is in response to an Equal Employment Opportunity
9    (EEO) discrimination complaint I filed with the California Department of Corrections (CDC)
10   Discrimination Investigation Unit-Central." The May 21 memorandum refers to alleged discriminatory
11   acts at issue here except Custody Captain Ron Hansen's November 2003 refusal to approve or sign Mr.
12   Peterson's performance evaluation completed by Mr. Peterson's supervisor.

13   Mr. Peterson fails to explain how the May 21 memorandum equates to a DFEH complaint to
14   trigger the 300-day exhaustion period. Mr. Peterson provides no authority that the "State Personnel
15   Board, Appeals Division" is authorized to grant and seek relief for discrimination complaints.
16   Moreover, there is no showing that the May 21 memorandum was served on CDC to render it a
17   legitimate discrimination complaint.

18   Perhaps realizing the ineffectiveness of the May 21 memorandum, Mr. Peterson points to his
19   nearly identical unverified June 6, 2005 memorandum ("June 6 memorandum") to EEOC's Fresno
20   office. Mr. Peterson contends that filing the June 6 memorandum with EEOC "may be deemed to have
21   been filed with DFEH on the same day, and he should be entitled to the entire 300-day period." Mr.
22   Peterson fails to explain how EEOC's automatic forwarding to DFEH of charges filed with EEOC
23   entitles Mr. Peterson to the 300-day exhaustion period given the absence of a cognizable verified DFEH
24   complaint and DFEH's deference to EEOC to address Mr. Peterson's claims.

### Sufficient Notice Of Discriminatory Acts

26   CDC faults Mr. Peterson's EEOC charge for absence of information to describe alleged
27   discriminatory acts prior to the April 14, 2005 alleged failure to notify Mr. Peterson of correction
28   lieutenant interviews. CDC argues that the "EEOC charge does not specify the factual particulars and

7

dates thereof, and, consequently, does not satisfy his EEOC administrative exhaustion requirement." CDC notes that the discrimination section of Mr. Peterson's EEOC charge includes checked boxes for "race" and "retaliation," indicates that April 14, 2005 is the latest date of discrimination, but fails to note an earliest date of discrimination. The particulars section of Mr. Peterson's EEOC charge states:

> I was hired by [CDC] on February 9, 1986. My most recent position is Correction Sergeant. Throughout the tenure of my employment, I have been denied a promotion to Correctional Lieutenant, most recently on April 14, 2005. . . .

Mr. Peterson responds that the June 6 memorandum "contained required specificity" from which the EEOC charge was prepared.

Failure to promote is a "discrete" act and "easy to identify" to constitute "a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114, 122 S.Ct. at 2073. As such, the U.S. Supreme Court concluded in *Morgan*, 536 U.S. at 110, 122 S.Ct. at 2070-2071 that:

> A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.

The U.S. Supreme Court explained:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.

*Morgan*, 536 U.S. at 13, 122 S.Ct. 2061.

Mr. Peterson's point as to the sufficiency of the June 6 memorandum is unclear. Assuming the June 6 memorandum constitutes a valid charge, its effect, at best, would relate back to December 7, 2004 (180 days from June 6, 2005). Such relation back does not help Mr. Peterson given application of the 180-day exhaustion period. The December 6, 2004 promotion denial and prior alleged discriminatory acts fall outside the 180-day exhaustion period running from June 6, 2005. Moreover, CDC's points as to lack of sufficiency are well taken. The April 14, 2005 promotion denial is the only specific discriminatory act mentioned in the EEOC charge to reflect a concession that other alleged discrimination was time barred.

**Knowledge – Equitable Tolling**

Mr. Peterson contends that the limitations period "did not begin to run until April 2005, when

8

he concluded that his employer's actions had been impermissibly motivated by race." Mr. Peterson points to *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir. 1980), an employment termination action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, where the Ninth Circuit Court of Appeals explained that "inquiry for purposes of determining when the limitations period begins to run must center on the date when the employee has notice of the unlawful act" and that "in ADEA suits, the applicable limitations period is activated once the employee knows or should have known that an unlawful employment practice has been committed." Mr. Peterson further points out: "The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations . . . until the plaintiff can gather what information he needs." *Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir. 2003) (quoting *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)).

Despite three promotion denials in 2004, Mr. Peterson appears to contend that he is relieved of sooner pursuing his discrimination claim because the April 2005 failure to notify him of interviews "forced me to conclude there was no other explanation for these events, other than that in truth they had all been based upon discriminatory animus all along." Mr. Peterson contends that the idea of discrimination dawned on him after no less than five discrete discriminatory acts, dating back to November 2003. Mr. Peterson's declaration provides no meaningful information to demonstrate a lack of notice of unlawful acts, especially given he was thrice denied promotions in 2004 and claims he realized that as early as July or August 2004, an inferior candidate had been promoted over him. To extend the limitations period as he seeks, Mr. Peterson must demonstrate that no sooner than December 29, 2004 (180 days prior to the June 28, 2005 filing of his EEOC charge), he first became aware, should have become aware of, or gathered facts to support his discrimination claim. Mr. Peterson fails to do so in that he acknowledges in his declaration that he learned of " negative consequences" no later than December 2003 (doctoral education program), early June 2004 (lack of performance evaluation approval), and late July or early August 2004 (promotion of inferior candidate). Based on his

acknowledgment of when he learned of negative consequences, Mr. Peterson cannot establish that a similarly situated person with reasonably prudent regard for his rights would not have sooner taken action or that a reasonable plaintiff would not have known of a possible claim's existence.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court GRANTS summary adjudication that plaintiff Spencer Peterson III's claims arising prior to December 29, 2004 are time barred and not sufficiently described in his EEOC charge to exhaust them.

IT IS SO ORDERED.

**Dated:   May 15, 2007**                              **/s/ Lawrence J. O'Neill**
                                                      UNITED STATES DISTRICT JUDGE