# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER PETERSON III, | CASE NO. CV F 06-0349 LJO TAG |
| Plaintiff, | **ORDER ON PLAINTIFF'S RECONSIDERATION MOTION** (Doc. 53.) |
| STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al, | |
| Defendants. / | |

## INTRODUCTION

Plaintiff Spencer Peterson III ("Mr. Peterson") seeks reconsideration of summary adjudication that one his employment discrimination claims was not timely exhausted and sufficiently described in an administrative claim. Defendant California Department of Corrections and Rehabilitation ("CDC") contends that Mr. Peterson fails to meet foundational requirements to warrant reconsideration of summary adjudication. This Court considered Mr. Peterson's reconsideration motion on the record and VACATES the July 23, 2007 hearing, pursuant to this Court's Local Rule 78-230(h). For the reasons discussed below, this Court DENIES Mr. Peterson reconsideration of his employment discrimination claim.

# BACKGROUND

Mr. Peterson is black and since 1986 has worked for CDC as a corrections officer. Mr. Peterson was promoted to corrections sergeant in 1999.

Prior to summary adjudication in CDC's favor, Mr. Peterson pursued a cause of action under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq., to allege that CDC discriminated against him on the basis of race by refusing to promote him to correctional lieutenant. This Court summarily adjudicated that all but one alleged CDC discriminatory act were barred due to Mr. Peterson's failure to timely exhaust and sufficiently describe the acts in an administrative complaint. More specifically, this Court's May 15, 2007 decision ("May 15 decision") summarily adjudicated that Mr. Peterson's claims arising prior to December 29, 2004 are time barred and not sufficiently described in his Equal Employment Opportunity Commission ("EEOC") charge to exhaust them.

With his reconsideration motion, Mr. Peterson challenges only summary adjudication of his claim that on December 6, 2004, Mr. Peterson interviewed for but was denied promotion to correctional lieutenant ("December 6, 2004 interview claim"). Mr. Peterson's grounds for reconsideration are that:

1. One of CDC's undisputed facts was misconstrued unfavorably to Mr. Peterson;
2. A memo produced by CDC after the May 15 decision demonstrates that Mr. Peterson's December 6, 2004 interview claim is not time barred; and
3. A U.S. Supreme Court decision issued 14 days after the May 15 decision supports Mr. Peterson's December 6, 2004 interview claim.

CDC responds that Mr. Peterson "merely rehashes and reconstitutes the same argument" he made to oppose summary adjudication. CDC argues that Mr. Peterson fails to demonstrate new or different facts or circumstances to meet threshold requirements for reconsideration.

# DISCUSSION

## Reconsideration Standards

Either the moving or opposing party may seek reconsideration of a summary judgment/adjudication ruling. *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir.), *cert. denied*, 493 U.S. 868, 110 S.Ct. 192 (1989). Reconsideration is appropriate when the district court is presented with newly discovered evidence, committed clear error, or there is an intervening change in controlling law. *School*

*District No. 1J, Multnomah County, Oregon v. A C and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742 (1994). A motion for reconsideration of a summary judgment ruling is restricted:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.*

*Publisher's Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665-666 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984) (emphasis in original)); *see Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1142, n. 6 (9th Cir. 1999), *cert. denied*, 529 U.S. 1129, 120 S.Ct. 2005 (2000). Reconsideration should not be used "to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *See Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D. Del. 1990). Under this Court's Local Rule 78-230(k), a party seeking reconsideration must demonstrate "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion."

### Misconstrued Undisputed Fact

With its summary adjudication moving papers, CDC proffered its Undisputed Material Fact No. 9 ("UMF No. 9"), which states: "On December 6, 2004, plaintiff interviewed for promotion to correctional lieutenant but, because of racial discrimination, was denied promotion." CDC's supporting evidence for UMF No. 9 was a corresponding allegation in Mr. Peterson's complaint. Mr. Peterson did not dispute UMF No. 9.

Mr. Peterson asserts that this Court "read into" UMF No. 9 that **on December 6, 2004**, CDC decided not to promote Mr. Peterson and communicated such decision to Mr. Peterson or Mr. Peterson learned of such decision. Mr. Peterson claims that this Court so misconstrued UMF No. 9 because his complaint, the support for UMF No. 9, alleges that **after** December 6, 2004, "candidates other than plaintiff, who were not African-American, and who were in truth less qualified for the position than was plaintiff, were promoted instead of plaintiff." Mr. Peterson notes that the complaint's "allegations make

3

1  no reference to any date that either the decision was communicated to plaintiff, or that plaintiff learned
2  of the decision." Mr. Peterson claims that he did not dispute UMF No. 9 because he "did not interpret
3  the fact as either expressly including any mention or implication of what date the promotional decision
4  was made, or of any date on which the decision was communicated to plaintiff or that he came to learn
5  of it."

6  Mr. Peterson points to nothing specific in the May 15 decision to support that this Court
7  misconstrued UMF No. 9 to the effect that on December 6, 2004, CDC communicated its decision not
8  to promote Mr. Peterson or Mr. Peterson learned of the decision. Mr. Peterson points to this Court's
9  unrelated statement that "Mr. Peterson's declaration provides no meaningful information to demonstrate
10 a lack of notice of unlawful acts, especially given he was thrice denied promotions in 2004 and claims
11 he realized that as early as July or August 2004, an inferior candidate had been promoted over him."
12 Mr. Peterson attempts to convert his acceptance of UMF No. 9 into an unwitting concession. The
13 problem for Mr. Peterson is that this Court did not rely on UMF No. 9 for its decision, and Mr. Peterson
14 fails to demonstrate reliance on UMF No. 9 or this Court's misconstruction of it. Mr. Peterson's concept
15 of UMF No. 9 does not constitute newly discovered evidence, clear error or intervening change in
16 controlling law to warrant reconsideration.

### December 10, 2004 Memorandum

18 For reconsideration, Mr. Peterson further relies on a December 10, 2004 memorandum
19 ("December 10 memorandum") of a CDC legal assistant to a CDC sergeant and lieutenant to identify
20 four persons promoted to correctional lieutenant. The December 10 memorandum is not addressed to
21 Mr. Peterson, who does not authenticate the December 10 memorandum. Mr. Peterson extrapolates that
22 the December 10 memorandum "confirms that plaintiff could not possibly have been notified he was
23 not hired after the December 6, 2004 promotional interview, until December 10, 2004 at the very
24 earliest." Mr. Peterson claims that his December 6, 2004 interview claim is revived because December
25 10, 2004 falls within 180 days from his June 6, 2005 memorandum ("June 6 memorandum") to Fresno's
26 EEOC. CDC responds that the December 10 memorandum makes no difference in that it "does not
27 support an inference that plaintiff was denied promotion based on his race."

28 CDC is correct. The December 10 memorandum merely identifies candidates promoted to

correctional lieutenant.  The December 10 memorandum does not constitute a new fact or evidence to unwind summary adjudication.  As it did with the May 15 decision, this Court questions the dubious effect of Mr. Peterson's unverified June 6 memorandum, which does not even mention race in connection with alleged discrimination.  According to the June 6 memorandum, the basis of Mr. Peterson' complaint is denial of "equal consideration for promotional advancement based on merit, efficiency, and capabilities."  Mr. Peterson makes no attempt to demonstrate with admissible evidence that the June 6 memorandum is a valid EEOC charge.  There is no evidence that the June 6 memorandum was served on CDC.  CDC's December 10 memorandum does not transmute Mr. Peterson's June 6 memorandum into a valid EEOC race discrimination charge.  Mr. Peterson rehashes rejected arguments that the June 6 memorandum is a valid EEOC charge to attempt to revive his December 6, 2004 interview claim.

### New Supreme Court Decision

Mr. Peterson points to the May 29, 2007 U.S. Supreme Court decision of *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. __, 127 S.Ct. 2162 (2007).  Mr. Peterson does not appear to contend that *Ledbetter* is an intervening change in controlling law.  Mr. Peterson appears to argue that *Ledbetter* supports that the June 6 memorandum was "sufficient to constitute a charge of discrimination meeting exhaustion requirements."  Mr. Peterson's two references from *Ledbetter* fail to make his point, especially given that *Ledbetter* addressed discriminatory pay decisions for which the plaintiff "should have filed an EEOC charge within 180 days after each allegedly discriminatory pay decision was made and communicated to her.  She did not do so, and the paychecks that were issued to her during the 180 days prior to the filing of her EEOC charge do not provide a basis for overcoming prior failure." *Ledbetter*, 550 U.S. at __, 127 S.Ct. at 2169.

CDC points out that communication of pay decisions was not at issue in *Ledbetter* and that the U.S. Supreme Court did not hold that a discriminatory act plus communication of it to an aggrieved employee is necessary to trigger the EEOC charging period.  The U.S. Supreme Court explained:

> We have previously held that the time for filing a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC) begins when the discriminatory act occurs.  We have explained that this rule applies to any "[d]iscrete ac[t]" of discrimination, including discrimination in "termination, failure to promote, denial of transfer, [and] refusal to hire."  *National Railroad Passenger Corporation v.*

*Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Because a pay-setting decision is a "discrete act," it follows that the period for filing an EEOC charge begins when the act occurs.

*Ledbetter*, 550 U.S. at __, 127 S.Ct. at 2165.

*Ledbetter* does not warrant reconsideration of summary adjudication.

## **CONCLUSION AND ORDER**

For the reasons discussed below, this Court DENIES Mr. Peterson reconsideration of summary adjudication of his December 6, 2004 interview claim.

IT IS SO ORDERED.

**Dated:    July 17, 2007**                     **/s/ Lawrence J. O'Neill**
                                                                  UNITED STATES DISTRICT JUDGE