1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9    SPENCER PETERSON III,                          CASE NO. CV F 06-0349 LJO TAG

10                    Plaintiff,          _____ **FURTHER SUMMARY ADJUDICATION**
                                                      **ORDER**
11            vs.                                     (Docs. 51, 54.)

12    STATE OF CALIFORNIA DEPARTMENT
      OF CORRECTIONS AND REHABILITATION,
13    et al,

14                    Defendants.
      _____/
15

16                                      **INTRODUCTION**

17            Defendant California Department of Corrections and Rehabilitation ("CDC") seeks summary

18    adjudication on plaintiff Spencer Peterson III's ("Mr. Peterson's") sole remaining employment

19    discrimination claim that CDC failed to notify Mr. Peterson of an interview for a promotion.  Mr.

20    Peterson opposes summary adjudication and attempts to challenge CDC's supporting evidence and to

21    raise a factual issue as to CDC's notification of the interview.  This Court considered CDC's summary

22    adjudication motion on the record[1] and VACATES the July 23, 2007 hearing.  For the reasons discussed

23    below, this Court GRANTS CDC summary adjudication on Mr. Peterson's sole remaining employment

24    discrimination claim.

25    _____

26            [1]        This Court carefully reviewed and considered all arguments, points and authorities, declarations,
      depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.
27    Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did
      not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the evidence it
28    deemed admissible, material and appropriate for summary judgment/adjudication.

                                                      1

**BACKGROUND**

**Overview**

Mr. Peterson is black and since 1986 has worked for CDC as a corrections officer. Since 1997, Mr. Peterson has worked at CDC's substance abuse treatment facility (" treatment facility") in Corcoran, California. Mr. Peterson was promoted to corrections sergeant in 1999.

Mr. Peterson proceeds on his sole remaining claim under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e, et seq., to allege that CDC discriminated against him on basis of race by refusing to promote him to correctional lieutenant. More specifically, Mr. Peterson's remaining claim is that CDC failed to notify him of an April 14, 2005 interview for correctional lieutenant to exclude Mr. Peterson from a promotional opportunity.[2] CDC contends that it mailed proper notice of the interviews to Mr. Peterson's home address to negate his discrimination claim. Mr. Peterson claims that CDC failed to telephone him about the April 14, 2005 interview as it had for a December 6, 2004 interview.

**Correctional Lieutenant Interviews**

Lisa Marie Webb ("Ms. Webb") is a staff services analyst in the personnel department at the treatment facility. In 2005, Ms. Webb worked as an office assistant in the delegated testing unit ("testing unit"), a part of the treatment facility's personnel department.

In February or March 2005, Ms. Webb was informed that the treatment facility needed to conduct interviews for promotion to correctional lieutenant. Ms. Webb requested from the California State Personnel Board ("personnel board") a certified list of CDC employee candidates who had passed the written correctional lieutenant's examination and had expressed interest in such a correctional lieutenant position at the treatment facility. After receipt of the list from the personnel board, Ms. Webb prepared and first-class mailed to candidates a notice of upcoming lieutenant promotional interviews and that interested candidates should submit an application. Mr. Peterson submitted his March 15, 2005 application to note his Visalia, California residence address. The envelope to send his application indicates his Visalia residence as a return address. Mr. Peterson's application neither requested nor indicated Mr. Peterson's race. In her declaration, Ms. Webb notes that she had never met Mr. Peterson

---

[2]     Defense counsel's recent letter submitted by Mr. Peterson indicates that Mr. Peterson was promoted to correctional lieutenant in January 2006.

and "had no knowledge from any source what his race was."  Mr. Peterson challenges Ms. Webb's assertion and claims that prior to April 2005, he had personally met her more than once when he went to the treatment facility's administration for business.

Based on received correctional lieutenant applications, Ms. Webb prepared a notice to each applicant of the date, time and place of his/her interview.  Ms. Webb addressed an interview notice to Mr. Peterson to his Visalia residence address "based on the address that he stated in his application."  The notice set Mr. Peterson's interview for April 14, 2005 at 1:40 p.m. at the treatment facility.  The notice directed "questions regarding your interview" to Ms. Webb at her telephone extensions.  Ms. Webb declares: "Each of these candidate interview notices was by me properly addressed to the addresses listed in each applicant's application for employment, and were by me placed in the [treatment facility's] outgoing first-class U.S. mail as a group (including the notice to Spencer Peterson III) not later than on the morning of April 07, 2005."  According to Ms. Webb, the treatment facility's "mailroom affixes, by postage meter, the appropriate monetary amount of first-class postage to each piece of outgoing mail that it receives from [treatment facility] employees such as me, and that an employee of the U.S. Postal Service picks up such mail on the same day that the [treatment facility] mailroom postage-meters it."

In conjunction with the interview notices, Ms. Webb prepared a schedule of April 14, 2005 interviews for each candidate.  The schedule reflects Mr. Peterson's interview set for April 14, 2005 at 1:40 p.m.

Ms. Webb notes that the interview notice mailed to Mr. Peterson was not returned to her as "undeliverable" or "undelivered" and "had that occurred, the returned envelope would have been delivered to me because I was the person responsible for the mailing."

Ms. Webb declares that she "received no telephone call from Spencer Peterson III informing me that he had any issue with the scheduled interview date and time."  Ms. Webb further declares that during the application and interview process, she never received "any direction, suggestion, or hint that Spencer Peterson should be excluded from my mailing of interview notices to candidates eligible for promotion to correctional lieutenant."

3

1

**Mr. Peterson's Opposition**

2  Mr. Peterson's chief challenges to CDC's summary adjudication motion are that:

3  1.  Ms. Webb had met Mr. Peterson more than once prior to April 2005 when Mr. Peterson

4  visited the treatment facility's administrative offices for business;

5  2.  Ms. Webb's declaration lacks an explanation of her experience with the treatment

6  facility's mailroom or her review of files that no mail to Mr. Peterson was returned to

7  her; and

8  3.  Ms. Webb neither telephoned nor left a telephone message for Mr. Peterson to inform

9  him of the April 14, 2005 correctional lieutenant interview as she had for his December

10  6, 2004 interview.  As such, Mr. Peterson claims he missed his April 14, 2005 interview.

11

**DISCUSSION**

12

**Summary Judgment/Adjudication Standards**

13  F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment

14  in the party's favor upon all or any part thereof."  Summary judgment/adjudication is appropriate when

15  there exists no genuine issue as to any material fact and the moving party is entitled to

16  judgment/adjudication as a matter of law.  F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio*

17  *Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec.*

18  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment/adjudication

19  is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."

20  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin*

21  *Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

22  On summary judgment/adjudication, a court must decide whether there is a "genuine issue as to

23  any material fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c);

24  *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress*

25  *& Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464,

26  467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th

27  Cir. 1984). The evidence of the party opposing summary judgment/adjudication is to be believed and

28  all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of

4

1  the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986);

2  *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient

3  disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as

4  a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

5         To carry its burden of production on summary judgment/adjudication, a moving party "must

6  either produce evidence negating an essential element of the nonmoving party's claim or defense or

7  show that the nonmoving party does not have enough evidence of an essential element to carry its

8  ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

9  F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d

10 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party

11 must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102;

12 *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts

13 are material. Only disputes over facts that might affect the outcome of the suit under the governing law

14 will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

15        "If a moving party fails to carry its initial burden of production, the nonmoving party has no

16 obligation to produce anything, even if the nonmoving party would have the ultimate burden of

17 persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

18 "If, however, a moving party carries its burden of production, the nonmoving party must produce

19 evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d

20 at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

21 fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*

22 *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of

23 summary judgment, after adequate time for discovery and upon motion, against a party who fails to make

24 the showing sufficient to establish the existence of an element essential to that party's case, and on

25 which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough

26 evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan*

27 *Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence

28 necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

1   parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting

2   *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere

3   existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*,

4   477 U.S. at 252, 106 S.Ct. 2505.

5         Under F.R.Civ.P. 56(c), a summary judgment/adjudication motion, interlocutory in character,

6   may be rendered on the issue of liability alone.  "In cases that involve . . . multiple causes of action,

7   summary judgment may be proper as to some causes of action but not as to others, or as to some issues

8   but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123

9   (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v.*

10  *Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant

11  summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v.*

12  *F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

13        Mr. Peterson does not challenge meaningfully the material facts raised by CDC.  As discussed

14  below, CDC is entitled to summary adjudication on Mr. Peterson's sole remaining claim that CDC failed

15  to notify him of an April 14, 2005 interview for correctional lieutenant.

### Mailbox Rule

17  _____CDC contends that Mr. Peterson is unable to produce evidence that because of race

18  discrimination or any other reason, CDC did not mail him notice of the lieutenant promotion interview.

19  CDC notes that notice to Mr. Peterson was addressed to his correct residence address (which he

20  provided) and was placed in the ordinary course of U.S. Postal Service mailing.  CDC further notes that

21  Mr. Peterson's interview was placed on the treatment facility's official schedule with other applicants'

22  interviews.  CDC concludes that it provided the same interview notice to Mr. Peterson as it did to all

23  other applicants.  CDC notes that Ms. Webb handled the application and notice process and was not

24  influenced to exclude Mr. Peterson from the interview process.

25        CDC argues that since its initial interest inquiry and interview notice were first-class mailed to

26  Mr. Peterson's residence address, the "mailbox rule applies."  "The rule is well settled that proof that

27  a letter properly directed was placed in a post office creates a presumption that it reached its destination

28  in usual time and was actually received by the person to whom it was addressed." *Hagner v. United*

1   *States*, 285 U.S. 427, 430, 52 S.Ct. 417, 419 (1932) (citing *Rosenthal v. Walker*, 111 U. S. 185, 193, 4

2   S. Ct. 382, 28 L. Ed. 395 (1884)). "Under the 'mailbox rule,' upon proof that mail is properly addressed,

3   stamped and deposited in an appropriate receptacle, it is presumed to have been received by the

4   addressee in the ordinary course of the mails." *Herndon v. De la Cruz (In re De la Cruz)*, 176 B.R. 19,

5   22 (9th Cir. BAP 1994) (citing *Hagner*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861)); *see United*

6   *States v. Perdue*, 469 F.2d 1195, 1203 (9th Cir. 1972) (fact that draft registrant had received mail at

7   address he provided created rebuttable presumption that draft registrant received subsequent notice).

8       Mr. Peterson offers nothing to dispute that a notice of the lieutenant promotion interview was

9   addressed to his correct residence address (which he provided) and was placed in the ordinary course

10  of U.S. Postal Service mailing.  Mr. Peterson further fails to dispute that Mr. Peterson's interview was

11  placed on the treatment facility's official schedule with other applicants' interviews.  There is no

12  evidence that the interview notice mailed to Mr. Peterson was returned to CDC as undeliverable or

13  undelivered.  The undisputed evidence is that CDC mailed an interview notice to Mr. Peterson and set

14  his April 14, 2005 interview.

15      Mr. Peterson's challenge that Ms. Webb had met him prior to April 2005 does not raise a

16  material fact dispute.  "As to materiality, the substantive law will identify which facts are material.  Only

17  disputes over facts that might affect the outcome of the suit under the governing law will properly

18  preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.  Mr. Peterson

19  fails to illustrate how his prior meeting of Ms. Webb supports his claim.  At the time in question, Ms.

20  Webb was an office assistant who mailed interview notices to candidates.  Mr. Peterson's evidence does

21  not reveal that Ms. Webb's knowledge or actions support a Title VII claim.  Her functions were

22  ministerial and raise no inference of discriminatory action.  Mr. Peterson's complaint alleges that

23  persons with higher authority than Ms. Webb participated in alleged discriminatory acts.  The complaint

24  fails to allege that Ms. Webb participated in discriminatory acts.  Mr. Peterson offers no evidence of a

25  connection between Ms. Webb and alleged participants in discriminatory acts.

26      Mr. Peterson's points as to purported deficiencies in Mr. Webb's declaration are unconvincing.

27  Ms. Webb's declaration reveals that she has worked for CDC for more than seven years and for several

28  years at the treatment facility.  The duties of her position familiarize her with mail practices and

protocol.  Issues as to Ms. Webb's mailroom familiarity and duties are unavailing in that they fail to address CDC intent to discriminate against Mr. Peterson, an essential element of his claim.  The issue of whether Ms. Webb failed to investigate return of Mr. Peterson's interview notice is immaterial given Mr. Peterson's failure to challenge mailing of the notice to him.

Mr. Peterson fails to demonstrate that the absence of telephone notice of the April 14, 2005 interview amounts to discrimination, especially given CDC's undisputed evidence of mail notice to Mr. Peterson's residence address.  Mr. Peterson offers no evidence that other candidates received telephone notice and that he was singled out not to receive telephone notice.  Mr. Peterson produces insufficient evidence to create a genuine issue of material fact to defeat summary adjudication, and CDC has negated an essential element of Mr. Peterson's claim of intent to discriminate based on race.

**<u>CONCLUSION AND ORDER</u>**

For the reasons discussed above, this Court:

1. GRANTS CDC summary adjudication on Mr. Peterson's remaining employment discrimination claim that CDC failed to notify Mr. Peterson of an April 14, 2005 correctional lieutenant interview;

2. DIRECTS this Court's clerk to enter judgment in favor of defendant California Department of Corrections and Rehabilitation and against plaintiff Spencer Peterson III; and

3. VACATES the August 20, 2007 pretrial conference and September 10, 2007 trial.

IT IS SO ORDERED.

**Dated:    July 17, 2007**                          **/s/ Lawrence J. O'Neill**
                                                     UNITED STATES DISTRICT JUDGE